[No. 48325-1-I. Division One. September 3, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. PARAMJIT SINGH DHALIWAL, *Appellant*.

*Richard A. Hansen* and *Cassandra L. Stamm* (of *Allen, Hansen & Maybrown, P.S.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates, Deputy*, for respondent.

BAKER, J. — Paramjit Singh Dhaliwal shot and killed fellow Farwest cab driver Jasbir Bassi. At the time of Dhaliwal's murder trial, his defense attorney was simultaneously representing several defense witnesses in a shareholder action against Farwest. His attorney had also previously represented a key prosecution witness in a criminal matter for which Dhaliwal was also charged. Dhaliwal was convicted of premeditated murder in the first degree and carrying a concealed handgun. His principal argument on appeal is that his Sixth Amendment right to a conflict-free attorney was violated when the trial judge failed to adequately inquire into the potential conflicts. We agree that the judge failed to conduct an adequate inquiry into the potential conflicts, but affirm his conviction because Dhaliwal has not made a showing that the potential conflict adversely affected his attorney's performance.

I

On December 28, 1999, Paramjit Singh Dhaliwal shot and killed fellow Farwest cab driver, Jasbir Bassi. At the time of the shooting, Dhaliwal was closely affiliated with the Farwest company board of directors and was a member of the grievance committee. During the board's 1999 tenure, Dhaliwal and the board instituted controversial changes which created serious disputes among Farwest shareholder drivers.

The internal politics created a deep rift between the two factions of Farwest. The 1999 board, with which Dhaliwal was aligned, was at odds with the 1998 board that Bassi supported. The bitter conflict among shareholders and drivers frequently resulted in violence.

Dhaliwal bought a 9 mm semiautomatic handgun one day before the shooting. At the firearms store, he said that

he needed the gun quickly because he was working New Year's Eve and was afraid of potential violence. The employee at the store sold Dhaliwal his own personal gun to avoid the legal week-long waiting period.

Earlier on the day of the shooting, Dhaliwal and his friend Harbhajan Singh assaulted Ranjit Kandola, who opposed Dhaliwal's policies on the grievance board and the actions of the directors. Later, Dhaliwal told his good friend and cousin, Gurinder Grewal, that he was happy he had hit Kandola and "it felt like a victory for him."

Bassi and several other Farwest drivers opposed to Dhaliwal and the 1999 board gathered to discuss the morning's confrontation. Kandola explained to the group that Dhaliwal had assaulted him, and Bassi grew increasingly upset. While the group was gathered, one of the men spotted Dhaliwal's cab. Bassi and four others borrowed a car because they did not want to be recognized in their own, and began pursuing Dhaliwal. The remaining two followed in a second car. Three of the people with Bassi had experienced violent confrontations with Dhaliwal in the past.

Bassi and his group followed Dhaliwal's cab to the Westin Hotel in Seattle, where Dhaliwal dropped off his fare. Grewal, Dhaliwal's friend, was waiting to meet him there. The group followed the cab until it stopped at a downtown intersection. Bassi then got out of the car and approached Dhaliwal. Eyewitnesses reported that when Bassi approached Dhaliwal's cab he began screaming and pounding his fists on the cab and waiving his arms. Dhaliwal responded by rolling down his window and firing his gun at Bassi, who was unarmed. Bassi then returned to his car and said, "I've been shot. He shot me. Call 911. Call the police." Dhaliwal stepped out of his cab and fired five or six more shots at Bassi.

Dhaliwal then fled the scene and abandoned his cab. Grewal also fled the scene, but was stopped by police a short time later. He gave a statement to police later that day, in which he claimed that there had been threats to kill

Dhaliwal and that the individuals in the car following Dhaliwal had been armed.

Bassi died two days later from his gunshot wound. Dhaliwal remained a fugitive for several months before turning himself in. He was released on bail pending trial.

After his release, Dhaliwal moved into the home of Grewal. Dhaliwal told Grewal that he had wanted to shoot Bassi in the head because Bassi had used the "F" word and had "disrespected" him. He also told Grewal that because Bassi had tried to take off his turban, an insult in the Sikh community, he could shoot him.

Dhaliwal's friendship with Grewal turned sour when it was reported that Dhaliwal was involved in distributing a letter reporting the alleged infidelity of Grewal's wife. The situation between the two deteriorated, resulting in Dhaliwal threatening Grewal's life. At trial, Grewal testified for the State.

At the time of Dhaliwal's trial, defense attorney Antonio Salazar was simultaneously representing Gurcharan Saidpur, Harbhajan Sidhu, Resham Singh, and Surinder Sohal in a shareholder action against Farwest contesting their termination by the 2000 board. Saidpur and Singh testified for the defense at Dhaliwal's murder trial. Salazar had previously represented Harbhajan Sidhu and Grewal on an assault charge in which Dhaliwal was a codefendant. In that case Dhaliwal, Sidhu, and Grewal were charged with felony assault against Avtar Singh. The State presented evidence that that matter was dismissed after Singh had been intimidated and threatened by Dhaliwal's supporters and failed to appear at trial.

Dhaliwal was charged with premeditated murder in the first degree and carrying a concealed handgun. A jury found him guilty of both counts, with a special verdict that he was armed with a firearm. A standard range sentence of 300 months was imposed. He appeals, arguing that Salazar's simultaneous and prior representation of critical witnesses for both the defense and prosecution violated his Sixth Amendment right to an attorney free of conflicts of interest.

## II

As a threshold issue, the State argues that Dhaliwal waived his Sixth Amendment right to a conflict-free attorney. We disagree, because the nature and full extent of the potential conflict was never explored thoroughly on the record and Dhaliwal had not been sufficiently informed on the record of the consequences of his choice.

 We review a defendant's claim of conflict of interest on the part of trial counsel de novo.[1] A criminal defendant has a Sixth Amendment right to a conflict-free attorney.[2] Trial courts may allow an attorney to proceed despite a conflict "if the defendant makes a voluntary, knowing, and intelligent waiver."[3] Whether a defendant has made a valid waiver of his Sixth Amendment rights depends " 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' "[4] For a waiver to be knowing and intelligent, the defendant must have been " 'sufficiently informed of the consequences of his choice.' "[5] In making such a determination, the court must " 'indulge every reasonable presumption against the waiver of fundamental rights.' "[6]

In *Garcia v. Bunnell*, the Ninth Circuit held that a criminal defendant waived his attorney's conflict where the record showed that the defendant was well aware of his rights to an unbiased counsel, to seek outside legal advice, and to discuss with the court any dissatisfaction with his

---

[1] *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995); *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994).

[2] *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995).

[3] *Garcia*, 33 F.3d at 1195.

[4] *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).

[5] *Evans v. Raines*, 705 F.2d 1479, 1480 (9th Cir. 1983) (quoting *Hodge v. United States*, 414 F.2d 1040, 1042 (9th Cir. 1969)).

[6] *United States v. Allen*, 831 F.2d 1487, 1498 (9th Cir. 1987) (quoting *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942)).

appointed counsel.[7] "[A]fter the court explicitly discussed with him the possible conflict, [he] was articulate and forthright in declaring his desire to proceed with [his attorney]."[8]

In *In re Personal Restraint of Pirtle*,[9] the Washington Supreme Court held that a criminal defendant waived his attorney's conflict because he agreed to continue with his appointed counsel after being expressly advised by the public defender's office that it had represented certain prosecution witnesses.[10] In reaching its decision, the court relied on the trial court's colloquy with Pirtle.

> The [trial] court asked Pirtle if, knowing the potential ramifications of having these witnesses testify, "do you wish to continue with the Public Defender's Office and Mr. Westerman's representation?"[11] In response, Pirtle said, "[y]es I do. I'm very pleased with my lawyer, and I—I mean, we [have] been waitin' eight months now to get discovery and everything. I don't want to spend another eight months with a new lawyer."[12]

Pirtle's waiver occurred after being expressly advised by the trial court of the potential ramifications arising from the previous representation of prosecution witnesses.

Here, the prosecutor brought the possible conflict to the court's attention. In the colloquy that followed, Salazar stated he had represented three of the witnesses that would be called to testify on Dhaliwal's behalf and that Dhaliwal was aware of the representation. They were Harbhajan Singh, Gurcharan Saidpur, and Resham Singh. Salazar stated that he had discussed his representation of these witnesses with Dhaliwal and he was agreeable. The court then asked Dhaliwal if he understood what they were

---

[7] *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994).

[8] *Garcia*, 33 F.3d at 1197.

[9] 136 Wn.2d 467, 965 P.2d 593 (1998).

[10] *Pirtle*, 136 Wn.2d at 476.

[11] *Pirtle*, 136 Wn.2d at 475.

[12] *Pirtle*, 136 Wn.2d at 475-76.

talking about and he answered, "I do." The court concluded by stating:

There can arise situations where an attorney representing two different clients can have a conflict of interest because those individuals' interests diverge. It doesn't sound like that is directly a problem in this case. You and Mr. Salazar and these other individuals all know much more than I about that. What's important is that you all have your eyes open to the possibility that there could in some circumstances be a conflict and if there were a conflict, then that would need to be raised so we could take appropriate steps.

To which Dhaliwal responded, "I have no problem."

■ But the trial court never informed Dhaliwal that he was entitled to a conflict-free attorney, that he could receive outside legal advice about waiving the conflict, and that he could ask questions.[13] Only the three defense witnesses were mentioned, but not the State's key witness, Grewal, whom Salazar had previously represented in a criminal matter involving Dhaliwal. Because the nature and full extent of the potential conflicts were never explored thoroughly on the record, and Dhaliwal had not been " 'sufficiently informed of the consequences of his choice,' " we conclude that the colloquy did not produce a waiver of Dhaliwal's right to a conflict-free attorney.[14]

■ Dhaliwal contends that the trial court's failure to inquire regarding the nature and extent of the conflict automatically requires reversal. We disagree because he has not shown that the alleged conflict adversely affected his lawyer's performance.[15]

In determining whether an apparent conflict warrants reversal, we have traditionally employed a two-prong test: "First, a trial court commits reversible error if it knows or reasonably should know of a particular conflict into which it fails to inquire. Second, reversal is always necessary where

---

[13] *Garcia*, 33 F.3d at 1197.

[14] *Evans*, 705 F.2d at 1480 (quoting *Hodge*, 414 F.2d at 1042).

[15] *Mickens v. Taylor*, 535 U.S. 162, 173, 122 S. Ct. 1237, 1245, 152 L. Ed. 2d 291 (2002).

a defendant shows an actual conflict of interest adversely affecting his lawyer's performance."[16]

In formulating this rule, the Washington Supreme Court in *In re Personal Restraint of Richardson*[17] relied on three United States Supreme Court cases: *Holloway v. Arkansas,*[18] *Cuyler v. Sullivan,*[19] and *Wood v. Georgia.*[20] The Court in *Holloway* held that reversal of a conviction is required if a defendant or his attorney makes a timely objection to a claimed conflict and the trial court fails to conduct an adequate inquiry.[21] Two years later, *Cuyler* held that if a defendant does not make a timely objection and the trial court has no other reason to know about the conflict, a conviction will stand unless the defendant can show that his lawyer had an actual conflict and that the conflict adversely affected the lawyer's performance.[22] *Wood* involved a potential conflict that no one raised before the court, but that the judge should nevertheless have recognized. Without requiring proof that the conflict had adversely affected the lawyer's performance, the Court in *Wood* remanded the case so that the trial court could determine whether the conflict actually existed, and to grant a new trial if it did.[23]

But in the Supreme Court's most recent case on this subject, the majority opinion in *Mickens v. Taylor* held that

---

[16] *In re Pers. Restraint of Richardson*, 100 Wn.2d 669, 677, 675 P.2d 209 (1983).

[17] *Richardson*, 100 Wn.2d 669, 677, 675 P.2d 209 (1983) ("Taken together, *Holloway, Sullivan* and *Wood*" require reversal if a trial court knows or reasonably should know of a particular conflict into which it fails to inquire) (citing *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Wood v. Georgia*, 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)). *See also* Recent Cases, Mountjoy v. Warden, New Hampshire State Prison, *245 F.3d 31 (1st Cir. 2001)*, 115 HARV. L. REV. 938 (2002).

[18] 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

[19] 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

[20] 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981).

[21] *Holloway*, 435 U.S. at 488.

[22] *Cuyler*, 446 U.S. at 350.

[23] *Wood*, 450 U.S. at 272-74.

where a trial court failed to inquire into a potential conflict about which it knew or reasonably should have known, a defendant must establish that a conflict of interest adversely affected his counsel's performance.[24] In *Mickens*, a capital murder case, the defendant's trial counsel had been the murder victim's attorney at the time of the victim's death.[25] The trial judge was on notice of this fact because she was the same judge who handled the dismissal of the case against the murder victim.[26] The trial judge did not inquire into the possible conflict of interest.[27] Moreover, defense counsel did not tell the defendant that he had previously represented the victim, thus precluding the defendant from raising an objection.[28] Denying habeas relief, the Fourth Circuit held that "the rule of *Holloway* should not apply in a case such as this where there has been no showing of any hindrance of the defense and no objection by the defense to the conflict."[29] A 5-4 majority of the Court affirmed.

In reaching its decision in *Mickens*, the Court reviewed its prior cases, and limited the automatic reversal rule of *Holloway* to situations where defense counsel is forced to represent codefendants over a timely objection, unless the trial court has determined that there is no conflict.[30] Commenting on *Wood*, the Court reaffirmed the principle that if " '[o]n the record before us, we [could not] be sure whether counsel was influenced in his basic strategic decisions by the interests of the employer who hired him,' " remand would be necessary for the trial court " 'to deter-

---

[24] 535 U.S. 162, 173-74, 122 S. Ct. 1237, 1245, 152 L. Ed. 2d 291 (2002).

[25] *Mickens*, 535 U.S. at 164.

[26] *Mickens*, 535 U.S. at 165.

[27] *Mickens*, 535 U.S. at 165.

[28] *Mickens*, 535 U.S. at 165.

[29] *Mickens v. Taylor*, 240 F.3d 348, 357 (4th Cir. 2001).

[30] *Mickens*, 535 U.S. at 168.

mine whether the conflict of interest that this record strongly suggests actually existed.' "[31]

Here, the trial court knew of a possible conflict and failed to adequately inquire. The court did not inquire regarding the current status of the shareholder suit, nor did it address the issue of Salazar's past representation of the prosecution's key witness, Grewal, when it was made aware of that potential conflict during the course of the trial. Its colloquy was not "searching"[32] or "targeted at the conflict issue,"[33] as required by the Sixth Amendment. But Dhaliwal is not entitled to a reversal unless he is able to demonstrate that " 'an actual conflict of interest adversely affected his lawyer's performance.' "[34]

■ To demonstrate that an actual conflict of interest adversely affected his lawyer's performance, he must show that counsel " 'actively represented conflicting interests' " and that " 'an actual conflict of interest adversely affected his lawyer's performance.' "[35] Under the first prong, an actual, as opposed to a potential conflict of interest, is evidenced " 'if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action.' "[36] The actual conflict must be "readily apparent."[37] The appellant must point to specific instances in the record,[38] which suggest that the attorney was caught in a "struggle to serve two

---

[31] *Mickens*, 535 U.S. at 170 (quoting *Wood*, 450 U.S. at 273).

[32] *Garcia*, 33 F.3d at 1197.

[33] *Selsor v. Kaiser*, 81 F.3d 1492, 1501 (10th Cir. 1996).

[34] *State v. Robinson*, 79 Wn. App. 386, 394, 902 P.2d 652 (1995) (quoting *Cuyler*, 446 U.S. at 348).

[35] *State v. Davis*, 141 Wn.2d 798, 864, 10 P.3d 977 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (citing *Cuyler*, 446 U.S. at 348-50)).

[36] *Robinson*, 79 Wn. App. at 394 (quoting *Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir. 1983)).

[37] *State v. James*, 48 Wn. App. 353, 365, 739 P.2d 1161 (1987).

[38] *James*, 48 Wn. App. at 366.

masters."[39] The necessary undivided loyalty is missing "where counsel must slight the defense of one defendant to protect another."[40]

Under the second prong, the defendant must demonstrate that the lawyer's performance was adversely affected by the actual conflict, and that the conflict "hampered his defense."[41] The conflict "must cause some lapse in representation contrary to the defendant's interests,"[42] or have likely affected counsel's conduct of particular aspects of the trial or counsel's advocacy on behalf of the defendant.[43] "This showing of some adverse consequence is necessary because an attorney may harbor a conflict but nevertheless provide exemplary representation."[44] " '[W]ithout an assertion that counsel's performance was deficient, it is impossible to demonstrate that counsel's conflict "adversely affected" counsel's performance.' "[45] Each of the two prongs must be met.

Dhaliwal is unable to satisfy the first prong because he fails to show any instance in the record where his " 'interests diverge with respect to a material factual or legal issue or to a course of action.' "[46] He relies on the cross-examination of Grewal by Salazar's cocounsel for his argument that counsel owed continuing duties of loyalty and confidentiality to someone else:

Q: In fact, you were a defendant, were you not, with Mr. Dhaliwal and Harbhajan Singh in a case against you in which

---

[39] *Glasser*, 315 U.S. at 75.

[40] *James*, 48 Wn. App. at 369.

[41] *State v. Lingo*, 32 Wn. App. 638, 646, 649 P.2d 130 (1982).

[42] *Sullivan*, 723 F.2d at 1086.

[43] *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992).

[44] *Frazer v. United States*, 18 F.3d 778, 787 (9th Cir. 1994) (Beezer, J., concurring).

[45] *Robinson*, 79 Wn. App. at 395 (quoting *State v. Hatfield*, 51 Wn. App. 408, 414 n.3, 754 P.2d 136 (1988)).

[46] *Robinson*, 79 Wn. App. at 394 (quoting *Sullivan*, 723 F.2d at 1086).

they alleged you committed a felony assault on one of them; isn't that correct?

A: No.

Q: In fact, that case was dismissed against you, was it not?

A: The case you are talking—the guy you are talking was not a part of Farwest, the case which came. Your office represented me, Harbhajan Singh and Paramjit Dhaliwal, you know better than I can describe.

Q: And they alleged that you, along with Mr. Dhaliwal and Mr. Harbhajan Singh, assaulted someone, did they not?

A: Yeah.

Q: Was that a false accusation?

A: Yes.

Q: So you never assaulted anybody?

A: No.

Q: And they falsely accused you?

A: I came from India in February 1999. When I was arrested at the airport, at that time I came to know there was a case against me and it was for an assault. I came—from there I came home and after that I talked to Paramjit [Dhaliwal] and he said nobody will take care of it or anything. At that time, he had already hired Mr. Salazar's office to represent us.

Q: You didn't threaten anybody in that case, did you?

A: No.

Q: You were completely innocent, were you not?

A: Yes.

Salazar's cocounsel then dropped this line of questioning after the State's objection.

■ Assuming *Mickens* applies not only to potential conflicts of interest arising from concurrent representation of multiple parties, but as here, to cases where counsel has previously represented an adverse party or witness, Dhaliwal is not entitled to an automatic reversal because he has failed to show that the potential conflict of interest

adversely affected his counsel's performance.[47] The printed record does not reveal whether cocounsel was being ironic or sarcastic during the quoted exchange, but it is telling that Grewal underwent a vigorous cross-examination that fills 60 pages in the record leading up to that brief exchange. Moreover, it was the State's objection that brought the questioning to an end.

■ Nor are we persuaded by Dhaliwal's alternative argument that we should remand for further inquiry. In *Mickens*, the Court commented that *Wood* does not stand for the proposition that "where the trial judge neglects a duty to inquire into a potential conflict, the defendant, to obtain reversal of the judgment, need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance."[48] Here, the record neither demonstrates an actual conflict of interest nor resulting adverse consequences in counsel's performance. Remand is unnecessary.[49]

Finally, Dhaliwal contends that the prosecutor made improper remarks during closing argument that prejudiced the jury, resulting in an unfair trial. We disagree because the comments fall within the latitude allowed in final argument.

■ ■ Prosecutorial misconduct does not constitute prejudicial error unless the defendant demonstrates the impropriety of the prosecuting attorney's comments and their prejudicial effect.[50] A new trial is appropriate only if the defendant's right to a fair trial was prejudiced.[51]

---

[47] We do note, however, that the duty of the trial court judge to make an adequate inquiry is a continuing duty throughout trial. The possibility of a conflict of interest became obvious during the cross-examination of Grewal and the court should have inquired further.

[48] *Mickens*, 535 U.S. at 170.

[49] As the State noted during argument, this argument is better suited in the context of a personal restraint petition.

[50] *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994).

[51] *State v. Lord*, 117 Wn.2d 829, 887, 822 P.2d 177 (1991).

▆▆ When defense counsel does not object to a prosecutor's alleged misconduct, request a curative instruction, or move for a mistrial, appellate review of the alleged misconduct is precluded unless the conduct was so flagrant and ill intentioned that no instruction could erase the resulting prejudice.[52] If the unchallenged misconduct was so inflammatory that an instruction would not have cured it, the conviction must be reversed if there is substantial likelihood that the misconduct affected the jury's decision.[53]

▆▆ Dhaliwal did not object to any of the prosecutor's remarks during trial. He relies on *Bains v. Cambra*[54] for his argument that the prosecutor's comments invited the jury to give in to prejudice and rely on cultural or racial stereotypes to reach a verdict of guilt by cultural association.[55] In that case, the prosecutor stated in closing that " '[i]f you do certain conduct with respect to a Sikh person's female family member, look out. You can expect violence.' "[56] He also stated that " '[t]he laws in the United States [are] not what we're talking about. We're playing by Sikh rules.' "[57] The Ninth Circuit concluded that "[i]t is evident under clearly established federal law that this very kind of conduct by a prosecutor (to the extent that it involves either race or ethnicity) violates a criminal defendant's due process and equal protection rights."[58] Dhaliwal asserts that in this case, the State similarly infused its closing argument with generalizations about Sikhs, tending to support an assumption that Dhaliwal, because he was a Sikh, was more likely to act out violently. Specifically, he points to the State's theory that the dispute was one of tit-for-tat and that Dhaliwal's shooting of Bassi made sense

---

[52] *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

[53] *Belgarde*, 110 Wn.2d at 509-10.

[54] 204 F.3d 964 (9th Cir.), *cert. denied*, 531 U.S. 1037 (2000).

[55] *Bains*, 204 F.3d at 974.

[56] *Bains*, 204 F.3d at 975.

[57] *Bains*, 204 F.3d at 975.

[58] *Bains*, 204 F.3d at 974.

in "a path that was all too common within the Farwest cab company and indeed the Sikh community." He also points to the State's comment, "self defense is not reserved for those who, because of a cultural attribute, find swearing to be highly offensive or disrespectful."

These statements made during closing cannot be said to have the same impact as those in *Bains*. Prosecutors are permitted latitude to argue facts in evidence and make reasonable inferences to the jury.[59] During trial, both sides introduced evidence that certain actions were considered disrespectful in the Sikh community. For example, during Grewal's cross-examination, he testified that using the "F" word, removing someone else's turban, and statements about a wife being unfaithful all violated the traditions of the Sikh community. The prosecutor's comments during closing were based on evidence of many disputes and disagreements between the various participants in this case and were within the bounds of proper argument. Any possibly inappropriate aspect of these comments would easily have been cured by a timely objection and curative instruction.

Affirmed.

APPELWICK and SCHINDLER, JJ., concur.

Reconsideration denied October 10, 2002.

Review granted at 148 Wn.2d 1009 (2003).

---

[59] *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985).