Mario GARCIA, Petitioner–Appellant,

v.

William BUNNELL, Respondent–Appellee.

No. 93–16312.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1994.

Decided Sept. 2, 1994.

John Fresquez, Deputy State Public Defender, Sacramento, CA, for petitioner-appellant.

Robert D. Marshall, Deputy Atty. Gen., Sacramento, CA, for respondent-appellee.

Before: ALDISERT *, WIGGINS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Mario Mark Garcia is a California state prisoner serving a sentence of 33 years to life imposed upon his 1986 conviction on counts of first-degree murder and assault with a deadly weapon. He appeals the district court's denial of his 28 U.S.C. § 2254 petition regarding his conviction.[1]

In an ex parte hearing on the morning of trial, defense counsel Craig Holmes announced that he had accepted a position, to commence at the end of the trial, with the

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The district court granted Garcia's petition insofar as it related to his representation at sentencing, and the state does not appeal this judgment.

prosecution—the San Joaquin County District Attorney's office. Garcia expressed reservations about proceeding, and the trial judge granted him a five-day continuance to seek advice from other attorneys and family members. After this hiatus, Garcia declared that he would accept Holmes' representation. The trial proceeded, and the jury found Garcia guilty as charged.

After unsuccessful state appeals, Garcia petitioned for a writ of habeas corpus from the United States District Court for the Eastern District of California. He claimed that in obtaining his conviction the state violated his Sixth Amendment right to conflict-free representation. The magistrate judge conducted an evidentiary hearing regarding the potential conflict raised in Garcia's petition. On the basis of Holmes' deposition testimony,[2] the court found that Holmes had faced no actual conflict of interest in representing Garcia at trial and thus denied Garcia's petition.

Garcia timely appeals. We find that Garcia waived this Sixth Amendment right. Irrespective of Garcia's waiver, we also agree with the district court that Holmes did not face an actual conflict of interest. Therefore, Garcia's conviction did not violate his constitutional right and we affirm.

## Discussion

■ This court reviews *de novo* the decision of whether to grant or deny a petition for habeas corpus. *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir.1994). A petitioner's claim of conflict of interest on the part of counsel represents a mixed question of fact and law equally meriting *de novo* review. *Id.*

■ Garcia's right to conflict-free representation derives from the Sixth Amendment as applied to the states by the Due Process Clause of the Fourteenth Amendment. *Powell v. Alabama*, 287 U.S. 45, 68, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932). The Sixth Amendment's right to counsel requires effec-

tive assistance by an attorney, which has two components: competence and conflict-free representation. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

### A.

■ Even if counsel is subject to an actual conflict of interest, however, the trial court may generally allow the attorney to proceed if the defendant makes a voluntary, knowing, and intelligent waiver. *See Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978); *see also Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981) (finding of adequate waiver of Sixth Amendment right to counsel depends on particular facts and circumstances surrounding the case); *United States v. Allen*, 831 F.2d 1487, 1494 (9th Cir.1987).

■ We may affirm on any ground supported by the record, even if it differs from the reasoning of the district court, *United States v. Washington*, 969 F.2d 752, 755 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993), and our close examination of the trial court transcript indicates that Garcia knowingly, intelligently, and voluntarily decided to accept continued representation from Holmes despite the potential conflict presented by Holmes' future employment.[3] To the extent that Garcia's right to conflict-free counsel was at all impaired by Holmes' impending move, we hold that he waived it.

Holmes informed Garcia of his plans several hours before their court appearance. Garcia's comments to the court clearly indicated his knowledge of the potential for conflict and his recognition of his role in protecting his interests. The in camera discussion began as follows:

> HOLMES: ... I told him this morning down at the law library what my plans are

---

2. Garcia introduced no evidence of his own at the hearing.

3. The state courts made no findings to which we might owe deference on this matter. *See Collazo v. Estelle*, 940 F.2d 411, 415–16 (9th Cir.1991)

(state court determination of voluntariness reviewed *de novo*, but finding on knowing and intelligent prong reviewed for clear error only under 28 U.S.C. § 2254(d)), *cert. denied,* — U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992).

and I will let him explain how he feels about that.

COURT: Mr. Garcia, go ahead.

GARCIA: Yes, Your Honor. Mr. Holmes told me of his plans for the future, and in light of them I would like time to consult with my family and possibly some other attorneys, because I am looking at a very heavy penalty if I am found guilty, and I feel I need time to consult.

I have faith in Mr. Holmes, like I explained to him, but in view that he is going to be going over to the other side, it makes—my reservations are, you know, not that clear as to whether or not he will strike a deal or if he is palsy-walsy with Mr.—with the district attorney, Mr. Bowers, so I would like at least two days to consult with people.

COURT: All right. I think that is a reasonable request, Mr. Garcia.

After granting Garcia's request for a continuance to consult with other people as to whether he should continue with Holmes, the trial judge offered his own opinion. He explained that he had some personal knowledge of Holmes' work, and that he did not "think this would affect his performance as [Garcia's] attorney at all." Moreover, he observed that some degree of camaraderie between prosecutors and defense lawyers was normal and indeed healthy.

Garcia did not hesitate to maintain his own perspective:

GARCIA: I appreciate that, Your Honor. It is just that my views also extend to experiences that I have had. I have sat as a juror on the Nuestra Familia trial.

COURT: I know you did.

GARCIA: And going to Torrino's, I have noticed both sides. The attorneys and the prosecution were there and they talked very loud and a lot of things were said that I felt, you know, if I was the client, I don't think I would really want that person defending me. And that's why, the other reason why I would like to make the reservation to talk with somebody else. And then again, yesterday, I was to be assigned to Judge Saiers and Judge Saiers declined the case because he

has known me personally for over almost a year.

COURT: He was the judge in that case?

GARCIA: Yes, sir . . . he felt very uncomfortable handling my case. So, Your Honor, it seems like my case is falling apart as you could say. That is how I am looking at it.

COURT: I think you are certainly entitled to a couple of days, Mr. Garcia, and I don't have any problem with that and if it turns out that—you haven't hired Mr. Holmes, is that correct?

GARCIA: No.

COURT: He is court appointed. If it turns out—you are going to have to give me a good reason. The reason I am telling you this, if you asked me to excuse Mr. Holmes today because of the way you feel, I would probably be reluctant to do that, Mr. Garcia, because you haven't shown me anything that he has done that would indicate that he is an inadequate counsel. I think I can understand completely why you feel, "Hey, what's going on here?" That's fine. I'll give you a couple of days, but I am concerned.

The judge went on to explain that he had some concern for the convenience of witnesses and the court's docket. Reflecting that a two-day continuance meant that the case would resume on a Friday, he decided:

COURT: . . . maybe you would even feel better with the weekend. Friday is just like Monday, in effect.

GARCIA: Yes. Some of the people I am going to contact are in the legal profession. I don't know if I am going to be able to speak with them over the weekend. I don't know what their schedule is.

The court concluded:

COURT: . . . [T]hat will give you the weekend, time to talk and consult with the family and be prepared, unless you have a real good reason for me, to go ahead and we'll proceed on Monday with Mr. Holmes representing you.

GARCIA: I would like it to go on the record that I do have faith in Mr. Holmes as my attorney as of this time, and I would also like to state that I am not going to do

anything to dig into this gentleman's past or profession. I am merely concerned with my case. All I want to do is consult someone with a little bit more knowledge than myself as to—they may tell me, you know, I don't want to answer you or, you know, I don't know, but I just want it to go on the record that I respect Mr. Holmes and he is a good attorney. I have an awful lot of faith in him.

COURT: I think that is certainly not misplaced at all, Mr. Garcia.

The hearing actually resumed the following Tuesday, such that Garcia had a total of five days to consider the situation and to consult with his family as well as other attorneys he knew. The judge began:

COURT: This is an In Camera hearing to follow up on our hearing from last week. I gave Mr. Garcia a couple of days to consult and think about whether he wished to continue to have Mr. Holmes represent him.

Mr. Garcia, what did you decide on that issue?

GARCIA: Well, Your Honor, I spoke with members of my family and other people and I found out that my best choice would be to stick with Mr. Holmes at this time. I feel your recommendation that you told me last week, that he is a good attorney, you know, I took that into consideration and I think the fact that he was offered this position, I think that he very well deserves that position and I don't think they would have offered it to him if he wasn't a darned good choice for it.

COURT: That is my feeling, Mr. Garcia. So you are willing to proceed to trial with Mr. Holmes as your attorney knowing what you know at this point?

GARCIA: Yes, Your Honor....

COURT: ... [A]ny time there is a possible conflict between an attorney and client, we call that a Marsden hearing and that is basically what we had here. Really, it was more at my request and Mr. Holmes' request than it was your request, but technically it is your interest we are protecting here, your right to have an adequate counsel represent you and not someone who might be biased or prejudiced ...

but at this point you want to proceed with Mr. Holmes?

GARCIA: Yes, I do, Your Honor. I have the utmost faith in Mr. Holmes and I feel he will do his best.

COURT: Very good. Let's proceed, then.

The record here shows a defendant who was well aware of his interests, his right to an unbiased counsel, his right to seek outside legal advice, and his right to discuss with the court any dissatisfaction with his appointed counsel. He had received a longer continuance than he requested and, after the court explicitly discussed with him the possible conflict, was articulate and forthright in declaring his desire to proceed with Holmes. Only on appeal after conviction did he ever indicate any dissatisfaction with Holmes' services, and even then he suggested nothing which could have altered the substance of the pretrial discussion. The trial court's colloquies were less neutral and searching than we would prescribe *ab initio*, but contrary to Garcia's argument here the transcript indicates no meaningful coercion. We will "indulge every *reasonable* presumption against the waiver of fundamental rights," *Allen*, 831 F.2d at 1498 (emphasis added and citation omitted). However, given the facts and circumstances of this particular case we do not doubt that Garcia knowingly, intelligently, and voluntarily waived any rights even potentially implicated by Holmes' announcement. *See United States v. Jenkins*, 943 F.2d 167, 176 (2nd Cir.) (Where court determined whether defendant had waived potential conflict arising from defense counsel's pending application for employment as assistant U.S. attorney, "we are more concerned with whether the defendant appreciated his predicament and made a properly informed choice than we are with whether the trial judge recited any particular litany of questions."), *cert. denied*, — U.S. —, 112 S.Ct. 659, 116 L.Ed.2d 751 (1991).

### B.

Garcia contends that, far from waiving his Sixth Amendment right to conflict-free representation, he timely objected to Holmes' conflict of interest, and that the trial court's

failure to inquire thus mandates reversal of his conviction.

This question requires us to interpolate between two major Supreme Court pronouncements in the attorney-conflict area.[4] *Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 1180–81, 55 L.Ed.2d 426 (1978), requires automatic reversal "whenever a trial court improperly requires joint representation over timely objection." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), meanwhile, holds that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler* thus mandates a habeas inquiry that allows the defendant an opportunity to demonstrate the existence of an actual conflict. Garcia argues that *Holloway* created a rule of *per se* reversal on the basis of timely objection, and that through expressing his initial reservations about Holmes' representation he did timely object, bringing his case within the supposed ambit of *Holloway*.

Even if we assumed that Garcia did timely object, however, *Holloway* cannot bear the burden of Garcia's argument. In *Holloway*, the Court faced a situation in which a single attorney had represented three co-defendants. 435 U.S. at 477, 98 S.Ct. at 1175. The attorney made timely motions for appointment of separate counsel because the defendants had alerted him to the possibility that their interests might well conflict. *Id.* Counsel later renewed his objection on the ground that the defendants wished to testify and that he would be unable to examine them

because of his possession of privileged information. *Id.* at 479, 98 S.Ct. at 1176. All three defendants ultimately testified in narrative form only. *Id.* at 480–81, 98 S.Ct. at 1176–77. With such a blatant conflict of interest plain on the face of the trial record, the Court reversed because the trial court had "*improperly* required joint representation over timely objection." *Id.* at 488, 98 S.Ct. at 1181 (emphasis added).

■ In this case, there is no actual conflict manifest in the record. While "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1719 (citing *Holloway*, 435 U.S. at 487–91, 98 S.Ct. at 1180–82), the Supreme Court also clarified in *Cuyler* that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* 446 U.S. at 350, 100 S.Ct. at 1719; *see also Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987). Thus, even *Holloway* does not mandate reversal here unless Holmes actively represented competing interests.[5]

■ The record on appeal discloses no such active representation of competing interests. Holmes himself in no way suggested that he thought his advocacy for Garcia could be impaired; he merely thought it appropriate to alert the court. As the Supreme Court observed in *Burger v. Kemp*, "[W]e generally presume that the lawyer is fully conscious of the overarching duty of

---

**4.** The vast bulk of the caselaw in the attorney conflict area involves alleged conflicts arising out of representation of multiple defendants by a single attorney who may not be able simultaneously to serve optimally the interests of each. It is not logically necessary that the approach of these cases also apply to conflicts between a defendant's and the attorney's own personal interests; however, we conclude that precedent so requires. *See, e.g., Wood*, 450 U.S. at 271–72, 101 S.Ct. at 1103 (conflict between defendants and attorney who was paid by their employer analyzed under multiple representation precedents); *United States v. Miskinis*, 966 F.2d 1263 (9th Cir.1992) (multiple representation precedents apply to alleged conflict between lawyer

and defendant who with other representation might have been able to employ an advice of counsel defense); *Mannhalt v. Reed*, 847 F.2d 576 (9th Cir.) (multiple representation precedents applied to alleged conflict between defendant and lawyer under accusation by a prosecution witness of purchasing stolen goods from the witness), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988).

**5.** However, timely objection *would* have obviated the need for Garcia to show adverse effect if Holmes had labored under an actual conflict. *See Holloway*, 435 U.S. at 488, 98 S.Ct. at 1180–81.

complete loyalty to his or her client." 483 U.S. at 784, 107 S.Ct. at 3120. Indeed, Holmes later testified that in his interviews for the DA position he did not discuss the case, that he faced no pressure to be less than a zealous advocate, and that he had wanted to win his last trial as a criminal defense attorney. The *Cuyler* Court noted that "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel," 446 U.S. at 347, 100 S.Ct. at 1717; finally, the *Holloway* Court's emphasis on timely objection stemmed in significant part from its conclusion that "an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted." 435 U.S. at 485, 98 S.Ct. at 1178.

The mere fact of Holmes' future employment plans did not create an actual conflict. In *United States v. Unruh,* 855 F.2d 1363 (9th Cir.1987), *cert. denied,* 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988), we held that defense counsel's application for employment as an assistant United States attorney, disclosed to the defendant just before trial, did not constitute a conflict where "nothing in the record suggests that counsel allowed anything adversely to affect his representation." *Id.* at 1379. Similarly, in *United States v. Horton,* 845 F.2d 1414 (7th Cir. 1988), defense counsel in federal district court was a finalist for appointment as the United States Attorney for that district at the same time as he counseled his client to accept a plea agreement. Responding to the defendant's Sixth Amendment conflict of interest challenge, the Seventh Circuit held: "We will not indulge the presumption that a defense attorney who is being considered for a position as United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interests in mind." *Id.* at 1419.

Here, where Holmes already had the district attorney job, the potential for conflict was certainly no greater than that faced by counsel in *Unruh* and *Horton,* who were seeking employment with the prosecutor's office while representing a defendant. Given the inherently transitory nature of representation in the area of criminal law, as well as the potentially unlimited reach of the guilt-by-association logic Garcia would have us apply, we must significantly rely on the integrity of counsel in evaluating such potential conflicts.

Trial courts have a duty of inquiry whenever they know or reasonably should know that a particular conflict may exist. *See Wood v. Georgia,* 450 U.S. 261, 272–73 & n. 18, 101 S.Ct. 1097, 1103–04 & n. 18, 67 L.Ed.2d 220 (1981) (where defendant adult bookstore employees were represented by employer-paid counsel and interests of employer and employees appeared to conflict, Supreme Court raised the potential conflict *sua sponte* and remanded for a hearing); *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717–18 ("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."). The trial judge here should have conducted his own neutral inquiry as soon as he heard Holmes' disclosure, in order to reach his own informed judgment. Had he found an actual conflict, he should then have informed Garcia of his right to conflict-free representation and explicitly and neutrally discussed the possibility of waiver. Instead, as the magistrate judge noted in this proceeding, "the trial court assumed the answers to the crucial questions it never asked."

Nonetheless, in light of *Wood* and *Cuyler* the magistrate judge's evidentiary hearing was a proper exercise of the federal habeas court's plenary power to receive evidence. *See Rhoden v. Rowland,* 10 F.3d 1457, 1460 (9th Cir.1993); *see also Jamison v. Lockhart,* 975 F.2d 1377, 1381 (8th Cir.1992) (exercising "our discretionary power to order this hearing" on claim of attorney's alleged conflict of interest). The hearing was adequate and Garcia's conviction is not constitutionally infirm. Even at this stage, Garcia's critique of Holmes' performance and his evidence of an actual conflict amount to no more than Holmes' failure to object consistently and vigorously to the prosecution's allegedly prejudicial name-calling during closing arguments. Holmes' decision to refrain from objecting in no way indicates poor representation. *See, e.g., United States v. Molina,* 934

**1200**

F.2d 1440, 1448 (9th Cir.1991) (rejecting ineffective assistance claim because "many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hypertechnicality"). In our own examination, *see Sanders,* 21 F.3d at 1452, we have found nothing in the record to suggest that Holmes was influenced by the suggested conflict.

Garcia's petition is DENIED.