## Commonwealth vs. Charles Agbanyo.

No. 06-P-173.

Worcester. February 5, 2007. - August 24, 2007.

Present: Duffly, Dreben, & Cohen, JJ.

Further appellate review granted, 450 Mass. 1104 (2007).

*Practice, Criminal,* New trial, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Attorney at Law,* Conflict of interest. *Conflict of Interest. Consent.*

In the circumstances of a criminal defendant's motion for a new trial, brought on the ground that the defendant's right to the effective assistance of counsel was impaired by a conflict of interest arising from counsel's acceptance of an offer of future employment with the same district attorney's office that was prosecuting the defendant's case, the judge erred in concluding that the defendant voluntarily, knowingly, and willingly gave his consent to counsel's continuing representation [845-846]; however, where counsel's actions in seeking and accepting a position with the district attorney's office created a potential, rather than actual, conflict of interest [846-849], the defendant's failure to demonstrate any prejudice arising from the conflict warranted no relief from his conviction [849-850].

This court declined to disturb a trial court judge's exercise of discretion to decide a criminal defendant's motion for a new trial without a hearing. [850-851]

Complaint received and sworn to in the East Brookfield Division of the District Court Department on October 13, 2004.

The case was heard by *Dennis J. Brennan,* J., and a motion for a new trial, filed on July 6, 2006, was also heard by him.

*Michael J. Fellows* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

Cohen, J. On the morning of his jury-waived trial, the defendant, Charles Agbanyo, learned for the first time that his trial counsel[1] had accepted an offer of future employment with the same district attorney's office that was prosecuting the de-

---

[1]Appellate counsel for the defendant was not trial counsel in this matter.

fendant's case. In this appeal from the order denying his motion for a new trial,[2] the defendant claims that his right to the effective assistance of counsel was impaired by his attorney's conflict of interest. Although we disagree with the trial judge's rationale for denying the motion, i.e., that the defendant consented to his attorney's continuing representation, we affirm on other grounds. We conclude that the circumstances created a potential, but not an actual, conflict of interest and that the defendant is not entitled to relief because he has not demonstrated prejudice.

*Background.* The defendant was charged with intimidating a witness, see G. L. c. 268, § 13B, and threatening to commit a crime, see G. L. c. 275, § 2, as a result of events occurring during the September, 2004, criminal trial of his brother, Ian Agbanyo.[3] As established by the Commonwealth in its case against the defendant, during Ian's trial, Ian and Charles confronted two police witnesses who had been observed talking to each other while under a sequestration order. Later, when Ian was found guilty, Charles softly told one of the officers, "You'll get yours." Charles then waited outside the court house until the officers appeared, made menacing gestures, and yelled at them. Among other things, he yelled, "I'm going to get you," and "I come to your house, you're dead."

As a result of these events, criminal complaints issued from the East Brookfield Division of the District Court Department charging both Ian and Charles with witness intimidation and threatening to commit a crime. Because of the relationship of that court and its personnel to the underlying matter, Charles's trial counsel moved for a change of venue. The motion was allowed, resulting in the transfer of the case to the Worcester Division of the District Court Department.

On August 4, 2005, Ian and Charles, separately represented, were tried together in a jury-waived trial. That morning, while the defendant was waiting in the holding area for the proceedings to begin, his privately-retained trial counsel informed him

---

[2]The appeal before us is a consolidated appeal from the defendant's conviction and the order denying his motion for a new trial; however, the only issues presented are those raised in the new trial motion.

[3]To avoid confusion, we refer to Charles Agbanyo as "the defendant" or "Charles" and to Ian Agbanyo as "Ian."

that she had accepted an offer of employment from the Worcester County district attorney's office. Although the record contains differing accounts as to the extent of their conversation,[4] it is undisputed that this was the first time that the defendant learned that trial counsel had sought and obtained such employment.

This development was disclosed to the trial judge, who then conducted a brief colloquy with the defendant.[5] After the de-

---

[4] The defendant supported his motion for a new trial with his own affidavit, which averred, inter alia, that trial counsel initiated the discussion by telling him that she could not represent him anymore after trial that day. When he asked why, she informed him for the first time that she had taken a job as a prosecutor with the Worcester County district attorney's office. She then asked him how he felt about her representing him that day. He told her to "do the best she could." However, as the affidavit indicated, he was angry and upset and did not know what else to say. The defendant also averred that trial counsel did not advise him as to what his options were if he did not want her to represent him at trial. Although she had met with him approximately one or two weeks prior to the day of trial, trial counsel never told the defendant that she had been interviewing with or had been offered a job by the Worcester County district attorney's office.

The defendant also submitted an affidavit from his appellate counsel, which stated that he had made inquiries of the defendant's trial counsel and had received electronic mail messages (e-mail) in response. In these e-mails, which were appended to the affidavit, trial counsel wrote that she began interviewing for the position at the district attorney's office in June, 2005, and started her new position in September, 2005. She did not indicate when she received the job offer, even though the defendant's appellate counsel asked her to provide this information. Trial counsel acknowledged in the e-mail that she informed the defendant about her new position on the day of trial, and stated further that she told him that he could hire another attorney and had the option of not moving forward with the case. She also noted that she successfully had represented the defendant in other criminal cases, that she had prepared for trial, and that, while she explained to the defendant that it was his decision whether to continue to use her services, she expressed confidence in her ability to represent him. According to trial counsel, the defendant agreed to let her go forward.

[5] The colloquy, in its entirety, was as follows:

THE COURT: "Mr. Agbanyo, you've been made aware that [your trial counsel] has an arrangement to become employed by the office of the district attorney?"

THE DEFENDANT: "That [*sic*] what she told me."

THE COURT: "The middle district. And she's been over that with you?"

THE DEFENDANT: "Yes, sir. [Indiscernible.]"

THE COURT: "All right. And I want to make sure that you are aware of

fendant signified his consent to continued representation by trial counsel, the judge proceeded with the trial.

The Commonwealth presented its case through the testimony of three witnesses: the two police witnesses from Ian's trial, and an attorney who was with the officers when they encountered the defendant outside the court house. The defendant's trial counsel cross-examined all three of these witnesses, focusing on discrepancies in their accounts. Ian's attorney also cross-examined the police officers, but did not cross-examine the attorney witness. The defense then presented two witnesses: the attorney who represented Ian in the earlier case, and the mother of Ian's children, who also had been present at Ian's trial. The judge found Charles guilty on the charge of threatening to commit a crime and not guilty on the charge of witness intimidation, and found Ian guilty of witness intimidation.

The defendant appealed his conviction, obtained a stay of appellate proceedings, and pursued his motion for a new trial. The trial judge denied the motion without holding an evidentiary hearing, finding that the defendant, "a college educated person, a person with prior experiences in the Massachusetts Court system, a person not suffering from any mental or physical disability, expressed his consent to the continuing representation by [trial counsel]" and that "the defendant's consent was not coerced, nor the product of any confusion on the part of the defendant." Although the judge also stated that he "assume[d]

---

that arrangement and that you consent [to her] continued representation of you in this matter. Do you consent?"

THE DEFENDANT: "Yes, sir."

THE COURT: "How far did you go in school, Mr. Agbanyo?"

THE DEFENDANT: "I went to high school and went to [indiscernible] junior college."

THE COURT: "Some college. So you have some education, and you are fluent in the English language?"

THE DEFENDANT: "Yes, sir."

THE COURT: "And you understand these things as I say to you — as I speak to you, you understand what I'm saying?"

THE DEFENDANT: "Yes, Your Honor. Yes, sir."

THE COURT: "All right. Thank you."

without deciding" that this was a case of "genuine" or actual conflict of interest and that therefore the defendant did not need to show any prejudice in order to obtain relief, the judge made a finding that, based upon his reading of the transcript, "the defendant was not prejudiced in any way by the continued representation by [trial counsel]."

*Discussion.* We begin by addressing the issue of the defendant's consent, which was the stated ground for the judge's decision. "Under art. 12 of the Declaration of Rights of the Massachusetts Constitution, a defendant has the 'right to the full and undivided loyalty of his attorney. A defendant is entitled to the untrammeled and unimpaired assistance of counsel free from any conflict of interest.' " *Commonwealth* v. *Miller,* 435 Mass. 274, 282 (2001), quoting from *Commonwealth* v. *Shraiar,* 397 Mass. 16, 20 (1986). See *Commonwealth* v. *Allison,* 434 Mass. 670, 688 (2001). Nevertheless, even in a case of an actual, as distinct from a potential, conflict of interest, "a defendant may consent to continued representation by his attorney 'so long as his consent is voluntarily, knowingly, and intelligently made.' " *Commonwealth* v. *Martinez,* 425 Mass. 382, 392 (1997), quoting from *Commonwealth* v. *Goldman,* 395 Mass. 495, 498, cert. denied, 474 U.S. 906 (1985). However, the trial judge has an affirmative duty to conduct a colloquy to insure that the defendant is informed adequately of the risks and potential dangers of the conflict and to obtain the defendant's acknowledgment on the record that he understands this information. *Commonwealth* v. *Martinez, supra* at 393.

In the present case, the judge's exchange with the defendant (much like the colloquy held to be inadequate in *Commonwealth* v. *Martinez, supra* at 387 n.3) failed to cover important points. The judge neglected to inquire into the defendant's understanding of the possible conflict, to advise the defendant that he had a constitutional right to an attorney free of divided loyalties, to invite the defendant to raise or discuss any concerns that he might have, to inform the defendant that he could consult with another attorney before deciding what to do, or to offer a continuance to permit the defendant to investigate his options or obtain new counsel.[6] See *ibid.,* and cases cited. Given these deficiencies

---

[6]Even accepting trial counsel's unsworn version of events, her discussions

in the colloquy, we cannot conclude that the defendant — whatever his language ability and educational background — gave his consent voluntarily, knowingly, and intelligently.

We think, however, that the order denying the defendant's motion for a new trial may be sustained on alternative grounds. Compare *Commonwealth* v. *Ilges*, 64 Mass. App. Ct. 503, 515 (2005). Although we certainly do not condone trial counsel's belated disclosure of a situation that could have been relevant to the defendant's choice of representation,[7] we are of the opinion that seeking and accepting a position with the district attorney's office created a potential, rather than an actual, conflict of interest. That being so, to obtain relief from his conviction, the defendant was required to show prejudice; this he has not done.

"Our decisions have distinguished between actual and potential conflict of interest. To demonstrate an actual conflict, the defendant must prove that a genuine conflict existed." *Commonwealth* v. *Allison*, 434 Mass. at 688, citing *Commonwealth* v. *Davis*, 376 Mass. 777, 781 (1978). If the defendant shows a genuine conflict, "art. 12 does not require the defendant to show that the conflict resulted in actual prejudice or that it had an adverse effect on his counsel's performance." *Commonwealth* v. *Fogarty*, 419 Mass. 456, 459 (1995), and cases cited. However, where a defendant demonstrates only a potential conflict, the defendant's conviction will not be reversed except on a showing of actual prejudice. *Ibid.*

"An 'actual' or 'genuine' conflict of interest arises where the 'independent professional judgment' of trial counsel is impaired,

---

with the defendant were an "insufficient substitute for the judge's own inquiry of the defendant." *Commonwealth* v. *Martinez, supra* at 393 n.11.

[7]"Defense counsel should disclose to the defendant *at the earliest feasible opportunity* any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of counsel to represent him or her or counsel's continuing representation" (emphasis supplied). *Commonwealth* v. *Downey*, 65 Mass. App. Ct. 547, 550 n.8 (2006), quoting from Standard 4-3.5, Conflicts of Interest, ABA Standards for Criminal Justice: Prosecution Function and Defense Function (3d ed. 1993). Here, trial counsel said nothing to the defendant about her situation until the morning of his trial, on August 4, 2005, even though, by her own account, she had been interviewing for the position since June, 2005. Without considering whether counsel was required to disclose preliminary inquiries, we think that by the time she was under serious consideration for the position, it certainly behooved her to inform the defendant.

either by [her] own interests, or by the interests of another client." *Commonwealth* v. *Shraiar*, 397 Mass. at 20. "The burden is on the defendant to prove, without mere conjecture or speculation, both the existence and the precise character of the alleged conflict of interest." *Commonwealth* v. *Allison*, *supra* at 694. Unsubstantiated claims of divided loyalties will not suffice. See *ibid.*

In the present case, because trial counsel was not employed as a prosecutor at any time during her representation of the defendant, she was never in the position of owing conflicting professional duties to the defendant and to the district attorney's office. See, e.g., *Commonwealth* v. *Soffen*, 377 Mass. 433, 437-438 (1979); *Commonwealth* v. *Leo*, 11 Mass. App. Ct. 283, 285-286 (1981). It remains to be considered, however, whether her future employment at the district attorney's office created a substantial risk that her representation of the defendant "would be materially and adversely affected by [her] financial or other personal interests." *Commonwealth* v. *Milley*, 67 Mass. App. Ct. 685, 689 (2006), quoting from Restatement (Third) of the Law Governing Lawyers § 125 (2000).

According to the defendant, trial counsel's future position "created enormous economic, political and social pressure . . . not to upset her new employers and colleagues by aggressively defending this case." In particular, the defendant posits that trial counsel could not vigorously cross-examine the police witnesses, lest they become personally antagonized, refuse to cooperate with her when she assumed her new job, and enlist their colleagues to do the same. Thus, the defendant contends, trial counsel's personal interest in her future success as a prosecutor conflicted with her ability to represent him zealously and effectively.

We think, however, that the defendant's unsubstantiated assumptions about the behavior of both the police witnesses and trial counsel are too speculative to establish an actual conflict of interest. The possibility that police witnesses, familiar with the adversary system, would take personal offense at counsel's cross-examination and subsequently retaliate by sabotaging her work as a prosecutor is remote, at best, and the likelihood that counsel would "pull her punches" to avoid this possibility is

even more remote.[8] Instead, we view the situation as presenting only a potential conflict, requiring the defendant to demonstrate that, in fact, trial counsel did not effectively represent him.

We are not alone in rejecting the position that defense counsel's future employment as a prosecutor creates a per se, actual conflict of interest. See, e.g., *Garcia* v. *Bunnell*, 33 F.3d 1193, 1198-1199 (9th Cir. 1994), cert. denied, 514 U.S. 1024 (1995); *People* v. *Marshall*, 196 Cal. App. 3d 1253, 1257-1258 (1987); *People* v. *Doggett*, 255 Ill. App. 3d 180, 185-186 (1993); *Catala* v. *State*, 168 Md. App. 438, 460-461 (2006).[9] Because of its close factual similarities, we find *Garcia* to be particularly instructive.

In *Garcia* v. *Bunnell, supra* at 1194-1195, defense counsel announced on the morning of trial that, at the end of the case, he was commencing a position with the prosecuting district attorney's office. Although the defendant in *Garcia* was found to have effectively waived his right to conflict-free counsel, the United States Court of Appeals for the Ninth Circuit also opined that the attorney had no actual conflict of interest, as there was "no . . . active representation of competing interests." *Id.* at 1198. The court further observed that "[w]e generally presume that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client." *Id.* at 1198-1199, quoting from *Burger* v. *Kemp*, 483 U.S. 776, 784 (1987). "Given the

---

[8] By way of contrast, there was a far greater risk of impaired professional judgment in *Commonwealth* v. *Hodge*, 386 Mass. 165 (1982), relied upon by the defendant. In that case, a prosecution witness on a critical issue was a client of defense counsel's partner. The Supreme Judicial Court reversed the defendant's conviction, finding an actual conflict between counsel's "financial interest in not antagonizing his firm's client by a vigorous cross-examination designed to discredit him, and his duty to consider only [the defendant's] best interests in deciding whether and how to cross-examine [the witness]." *Id.* at 168. Significantly, the witness in *Hodge* was a current client of defense counsel's firm, such that defense counsel's professional and financial interests plainly and immediately were implicated.

[9] But see *Atley* v. *Ault*, 191 F.3d 865 (8th Cir. 1999). In that case, relied upon by the defendant, the court did not decide whether defense counsel's upcoming employment with the county attorney's office presented an actual or potential conflict. *Id.* at 871-872. The court held, however, that the defendant was entitled to habeas corpus relief because, without conducting an adequate inquiry into the nature of the conflict, the trial judge denied motions filed by both the defendant and defense counsel (and supported by the prosecutor) seeking permission for defense counsel to withdraw because of ethical concerns. *Id.* at 867, 873-874.

inherently transitory nature of representation in the area of criminal law, as well as the potentially unlimited reach of the guilt-by-association logic [the defendant] would have us apply, we must significantly rely on the integrity of counsel in evaluating such potential conflicts." *Garcia* v. *Bunnell, supra* at 1199.

Like the court in *Garcia,* we are unpersuaded that there was a substantial risk that an attorney in trial counsel's position would be unable to represent the defendant to the best of her abilities. Not only do we think that attorneys generally can be relied upon to act with integrity, we also find it implausible that counsel deliberately would turn in a weak performance when doing so would only demonstrate to her prospective colleagues that she was either unskilled or unethical.

It follows that, because the defendant has not shown an actual conflict of interest, he may obtain relief from his conviction only "if he demonstrates a potential conflict which materially prejudiced his defense." *Commonwealth* v. *Shraiar,* 397 Mass. at 24. "Actual prejudice is measured against the standard in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), as in cases involving ineffective assistance of counsel." *Commonwealth* v. *Croken,* 432 Mass. 266, 272 (2000). In other words, the defendant must show that his attorney's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer" and that, as a result, the defendant "likely [was] deprived . . . of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra.* When the complained-of conduct constitutes an exercise of strategic or tactical judgment, the defendant must demonstrate that his attorney's performance was "manifestly unreasonable" when undertaken. See *Commonwealth* v. *Edward,* 34 Mass. App. Ct. 521, 524 (1993), citing *Commonwealth* v. *White,* 409 Mass. 266, 273 (1991).

We observe at the outset that the defendant's claim of ineffective assistance is substantially undercut by the fact that trial counsel secured the defendant's acquittal of the more serious charge of intimidation of a witness. Moreover, like the judge, we have reviewed the transcript of the defendant's trial and see no indication that the defendant was prejudiced by trial counsel's continued representation. To the contrary, the record reveals that she "vigorously and skillfully represented the de-

fendant at trial." *Commonwealth* v. *Croken,* 59 Mass. App. Ct. 921, 922 (2003). Counsel cross-examined the Commonwealth's witnesses, including the police officers, to elicit inconsistencies in their testimony, and she then used those inconsistencies to argue that the officers fabricated their charges in retaliation for being accused of violating the sequestration order at Ian's trial.

Although trial counsel did not specifically question the officers about their alleged violation of the sequestration order, that subject already had been mined during cross-examination by Ian's attorney. It was not ineffective for counsel to avoid needless repetition, particularly in the context of a bench trial. See *Commonwealth* v. *Drew,* 447 Mass. 635, 650 (2006), cert. denied, 127 S. Ct. 2269 (2007). Other claimed deficiencies also are not indicative of ineffective assistance. Trial counsel's recommendations that the defendant proceed jury-waived and that he not testify at trial were tactical choices not shown to be manifestly unreasonable. And counsel's failure to object to alleged hearsay did not deprive the defendant of any substantial ground of defense, as the testimony in question was either admissible or harmless. See *Commonwealth* v. *Cohen,* 412 Mass. 375, 392 (1992).

The defendant's final argument, that the judge abused his discretion by not holding an evidentiary hearing prior to denying the motion for a new trial, is also without merit. In his motion for a new trial, the defendant included an alternative request for relief — that he be afforded a hearing "to determine the precise nature and extent of trial counsel's conflict." However, he gave no explanation of the factual issues that he wished to pursue or the witnesses that he wished to examine. On appeal, the defendant takes a different position, claiming that a hearing was required so that he could "examine other areas of potential prejudice not obvious from the transcript." Evidently, this would have involved examining trial counsel under oath on topics such as why she adopted certain strategies and whether she discussed the defendant's case during her interviews with the district attorney's office.

In view of the fact that the defendant's appellate argument was not made below, we will not disturb the judge's exercise of discretion to decide the motion without a hearing. See generally

*Commonwealth* v. *Goodreau*, 442 Mass. 341, 348 (2004). Moreover, because no credible or persuasive theory of prejudice was evident from the trial record or the information presented in the defendant's motion and affidavits, it appears, in any event, that holding a hearing would have accomplished nothing. *Id.* at 348-349.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*