UNITED STATES of America,
Plaintiff–Appellee,

v.

Carl Dexter MOORE, Defendant–
Appellant.

Nos. 92–10026, 97–15412.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1998.

Decided Sept. 23, 1998.

Michael Bradley Bigelow, Sacramento, CA, for defendant-appellant.

Christopher A. Nuechterlein, Assistant United States Attorney, Sacramento, CA, for plaintiff-appellee.

Appeals from the United States District Court for the Eastern District of California; William B. Shubb, District Judge, Presiding. D.C. Nos. CR–90–00117–WBS, CV–93–00795–WBS.

Before: FLETCHER, D.W. NELSON and BEEZER, Circuit Judges.

FLETCHER, Circuit Judge:

Carl Dexter Moore ("Moore") challenges his conviction for conspiring to distribute cocaine and possession of cocaine with intent to distribute, and his sentence of 30 years. Moore claims (1) that his trial counsel, Philip Cozens, had an actual conflict of interest because of Cozens' relationship with Moore's codefendant Kimbel LeMaux; and (2) that there was an irreconcilable conflict between Moore and his attorney, Cozens, that denied Moore his Sixth Amendment right to counsel.[1]

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291 and § 2255. Although we do not find sufficient evidence of an actual conflict of interest, we find that Moore had an irreconcilable conflict with Cozens that denied Moore his Sixth Amendment right to counsel, and reverse and remand for a new trial.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

Between 1982 and 1987, codefendant Kimbel LeMaux operated a criminal enterprise for the purchase and distribution of cocaine and marijuana throughout Northern California. Associated with LeMaux's enterprise were Moore, John–John Moore ("John–John"), Dennis O'Brien, Jerry Silva, and Tom D'Anna. Silva and D'Anna were among LeMaux's principal distributors. Moore was

---

1. Moore presents four additional claims that we need not address given our decision: (1) that the district court failed to inquire about the conflict and abused its discretion in not substituting counsel; (2) that Cozens failed to keep him informed of his plea bargaining negotiations and failed to pursue properly Moore's defense thus rendering ineffective assistance of counsel; (3) that the district court erred in not giving a specific unanimity instruction to the jury; and (4) that the district court erred in not granting him an evidentiary hearing on habeas review. We do not reach the merits of these claims. We are reversing and remanding the case because we hold that an irreconcilable conflict existed between Moore and Cozens.

LeMaux's debt collector, enforcer, and one of his drug distributors. Between 1983 and 1985, Moore and O'Brien would go two to three times a week to collect LeMaux's drug money, frequently using violence to collect the debts. In 1983, Moore got his son, John–John, involved in LeMaux's drug operations doing distributions and collections. John–John continued to work for LeMaux until 1987.

While extensive evidence links Moore to LeMaux's operation from 1982 until 1985, Moore disputes that he was involved in the conspiracy after April of 1985. The applicable statute of limitations bars prosecution for activities occurring prior to April, 1985. However, the testimony of Teacia Opperman that Moore, Vega and others met frequently at Silva's residence after April of 1985, where they either discussed or engaged in drug transactions, weighs against Moore's claim of withdrawal. Opperman also testified that in late 1987, Moore went to Silva's and informed him that cocaine deliveries would be discontinued because of Moore's fears that they were under investigation and that Moore's deliveries to Silva subsequently slowed and eventually stopped.

In September of 1990, the government filed a superceding indictment charging Moore and eleven codefendants with three counts: count one charged all defendants with intent to distribute cocaine from July 1984 to June 1988 in violation of 21 U.S.C. §§ 841(a)(1) & 846; count two charged Kimbel LeMaux alone with conducting a continuing criminal enterprise; count three charged Moore, LeMaux, Ingrid, and John–John with conspiracy to collect extensions of credit by extortion.

On four separate occasions before trial, Moore, in person or through Cozens, informed the district court that he could not communicate with Cozens and that he was dissatisfied with Cozens' investigations and preparations. The district court refused to order substitution of counsel but agreed to allow substitution if Moore could find an attorney that could be ready by the sched-uled trial date. Moore was unable to secure a substitute and went to trial with Cozens as his attorney. The jury convicted Moore on count one, intent to distribute cocaine, but acquitted on count three, conspiracy to collect extensions of credit by extortion.

As part of his motion for a new trial in June 1991, Moore again informed the district court that he was dissatisfied with Cozens' performance for failing to present a withdrawal defense and that Cozens had a conflict of interest in the case because of his relationship with Moore's codefendant, LeMaux. The district court put over the issue until July of 1991. In July, the district court determined that it was inappropriate to argue ineffective assistance of counsel in a new trial motion, stating that the appropriate means to challenge counsel's representation is pursuant to 28 U.S.C. § 2255. The district court then denied Moore's new trial motion but without prejudice to Moore's right to raise the issue by way of a § 2255 petition. Before sentencing, the district court again gave Moore the option of representation by new counsel but declined to extend any extra time to allow new counsel to prepare for sentencing. The district court strongly advised Moore to retain Cozens. Moore again protested Cozens' failure to present the withdrawal defense but followed the advice of the district court and retained Cozens for sentencing. Moore received a 30–year sentence on November 8, 1991. The sentence was pursuant to pre-guidelines law because the district court found that Moore's criminal activities had ended by November 1, 1987.

Following the filing of Moore's Notice of Appeal, we granted a limited remand, enabling the district court to entertain a 28 U.S.C. § 2255 petition before we reviewed Moore's direct appeal. Moore filed an initial § 2255 petition alleging that he was denied his constitutional right to testify at trial and that he was denied effective assistance of counsel.[2] Following withdrawal of his appellate counsel, Moore was permitted to file a pro se supplemental § 2255 petition in June of 1996, in which he added an allegation that

---

**2.** Moore alleged that Cozens failed to investigate adequately and present Moore's withdrawal defense, failed to communicate to Moore a written plea offer, failed to file a motion to sever, and advised Moore that he had no right to testify.

Cozens had a conflict of interest that denied him effective assistance of counsel.

The district court denied Moore an evidentiary hearing on his § 2255 petition and denied him relief on his claims. Specifically, the district court found that Moore was not denied his right to testify and that he received effective assistance of counsel. Moore's direct appeal and his appeal from denial of his § 2255 petition are consolidated before this court.

## ANALYSIS

### I. Conflict of Interest

■ Moore claims that an actual conflict of interest adversely affected Cozens' performance. A claim of conflict of interest on the part of trial counsel is a mixed question of law and fact that we review de novo. *See Garcia v. Bunnell,* 33 F.3d 1193, 1195 (9th Cir.1994).

■ Moore has a right to conflict free representation under the Sixth Amendment. *See id.* To establish a Sixth Amendment violation, Moore must show "that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 1198 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Moore must prove actual conflict, not just a possibility of conflict, "through a factual showing on the record." *Morris v. California,* 966 F.2d 448, 455 (9th Cir.1991). Once an actual conflict is shown, Moore need demonstrate only "that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *United States v. Miskinis,* 966 F.2d 1263, 1268 (9th Cir.1992). Prejudice is presumed. *Id.* If, however, there is only a possibility of conflict, Moore must meet the "performance and prejudice" standard of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Miskinis,* 966 F.2d at 1268.

Moore presents two sources of the actual conflict of interest between himself and Cozens–Cozens' relationship with Moore's codefendant, LeMaux, and Moore's threat to sue Cozens over Cozens' handling of the plea bargain. Moore's first claim is that Cozens had loyalties to LeMaux that were in conflict with Cozens' duty to Moore since Moore wanted to pursue a withdrawal defense that would have undermined LeMaux's defense that the conspiracy never happened. Given the conflict between the two defenses, proof of Cozens' loyalty to LeMaux would establish an actual conflict of interest between Cozens and Moore.

In a pretrial proceeding, Cozens told the district court that he knew LeMaux "in passing" but that he did not find himself conflicted in this case. On appeal, Moore argues that Cozens had a much closer relationship to LeMaux than he admitted to the district court. Although not presented before the district court, we now know that Cozens' "in passing" relationship stems from his living next door to LeMaux for approximately 8 to 10 months. Further, Moore claims that Cozens told him that "he [Cozens] and Kimbel LeMaux had 'wined and dined' together during the course of the trial" and that when they were neighbors "LeMaux had offered [Cozens] the use of a spare bedroom in LeMaux's home as a 'hideout,' and the use of a shotgun for Cozens' defense of his own home."

■ If true, these statements evidence a stronger relationship between Cozens and LeMaux than Cozens represented to the district court in pretrial proceedings. Presumably relying on Cozens' claim that he only knew LeMaux "in passing," the district court found, without further inquiry, that there was no conflict in Cozens' representation. Although at that time there was insufficient evidence before the district court to establish an actual conflict of interest, the district court's failure to inquire further is troubling. However, since there was no additional information at that time to suggest a conflict, the district court did not err in accepting Cozens' characterization of his relationship with LeMaux. Nor do we find sufficient evidence in the record before us to sustain Moore's allegation of an actual conflict of interest. An evidentiary hearing is in order, however, as we are ordering a new trial based on an irreconcilable conflict between Moore and Cozens, there is no need to remand for an evidentiary hearing to resolve this issue.

 Moore's next claim of conflict stems from Cozens' handling of the plea bargain offered by the government. The government conditioned its offer on Moore's acceptance by the close of business on January 3, 1991. Moore had countered the government's offer requesting absolute immunity for himself and his son. Cozens failed to advise Moore before the deadline that the government had rejected his counter offer or that Moore's son, John–John, had accepted the plea agreement. In fact it was not until January 4, 1991, that he met with Moore. Moore was enraged by Cozens' failure to keep him informed and threatened to sue Cozens for malpractice.

Moore now claims that his threat of a lawsuit created an actual conflict of interest with Cozens. Moore relies on *Douglas v. United States*, 488 A.2d 121 (D.C.App.1985), and *United States v. Hurt*, 543 F.2d 162 (D.C.Cir.1976), for the proposition that a lawsuit between defendant and counsel creates an actual conflict of interest under *Cuyler*. Cozens echoed Moore's concern during a hearing regarding Moore's request for substitution of counsel claiming Cozens had an actual conflict of interest along the lines of *Hurt* because of Moore's threat. The district court found no actual conflict because Moore's threat to sue Cozens' for ineffective assistance was not inconsistent with Cozens' goal of rendering effective assistance. We agree.

Although a lawsuit between defendant and counsel can potentially create an actual conflict of interest, we do not find that Moore's threat actually resulted in a conflict in this case. Unlike in *Douglas* and *Hurt*, Moore's threat of a malpractice suit never went beyond the threat to file a claim against Cozens. Despite Moore's assurances that he had a valid claim for malpractice, finding an actual conflict from a mere threat would allow defendants to manufacture a conflict in any case. We decline to adopt such an unbounded rule. While Moore's threat is evidence of the breakdown of the attorney-client relationship, we agree with the district court that it was insufficient to create an actual conflict of interest.

## II. Irreconcilable Conflict

 Moore claims that he was denied his Sixth Amendment right to counsel because of an irreconcilable conflict between himself and Cozens. We review de novo a claim of denial of counsel. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). Although Moore's counsel does not distinguish between conflict of interest (the existence of competing interests potentially affecting counsel's capacity to give undivided loyalty to his client's interests-a *Cuyler* claim) and irreconcilable conflict between client and lawyer (a *Frazer* claim), we view the allegations essentially as assertions of the latter. A defendant need not show prejudice when the breakdown of a relationship between attorney and client from irreconcilable differences results in the complete denial of counsel. *See Frazer*, 18 F.3d at 785 (attorney verbally assaulted defendant with racial epithets); *Tucker v. Day*, 969 F.2d 155, 159 (5th Cir.1992) (attorney merely "stood in" during sentencing); *United States v. Williams*, 594 F.2d 1258, 1260 (9th Cir.1979) (attorney-client relationship so bad that defendant elected to proceed pro se). Although Moore is not entitled to a particular lawyer with whom he can, in his view, have a "meaningful attorney-client relationship," *Morris v. Slappy*, 461 U.S. 1, 3–4, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), if the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates Moore's Sixth Amendment right to effective assistance of counsel, *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir.1970). The factors we consider are the same as those we apply to determine if the district court erred in denying a motion to substitute counsel.[3] These factors are: (1) the extent of the conflict; (2) the adequacy of the inquiry; and (3)

---

**3.** Moore also claims that the district court abused its discretion in not substituting counsel. We apply the same test for assessing whether the district court erred in failing to substitute counsel as we do in evaluating whether an irreconcilable conflict exists. *Compare United States v.*

*D'Amore*, 56 F.3d 1202, 1204–05 (9th Cir.1995), *with United States v. McClendon*, 782 F.2d 785, 789 (9th Cir.1986). Since we find that an irreconcilable conflict existed and remand for a new trial, it goes without saying that new counsel should have been substituted.

the timeliness of the motion. We find all three factors weigh in favor of our finding that an irreconcilable conflict existed between Moore and Cozens.

### A. Extent of Conflict

Moore describes his relationship with Cozens as one clouded by "an atmosphere of mistrust, misgivings and irreconcilable differences" resulting from claims of conflicting interests, ineffective assistance, and a breakdown of the attorney-client relationship. The breakdown of Moore's relationship with Cozens began with Cozens' failure to inform Moore timely of the government's rejection of Moore's counter offer to the government. In the January 4th meeting, Moore and Cozens had a "serious argument" over Cozens' handling of the case. Moore was enraged at Cozens' failure to inform him that John–John had taken the plea offer and at Cozens' failure to meet with him before the plea offer had expired. Moore was also upset over what he perceived to be Cozens' failure to investigate and his inadequate preparation for trial generally. During the meeting, Moore threatened to sue Cozens for malpractice. Also Cozens testified that, on that occasion, he felt physically threatened by Moore. The January 4th argument was serious enough that on January 8, 1991, Cozens, at the request of Moore, moved to be relieved as counsel and to be replaced by James Dremann. Moore told the court:

> "I asked Mr. Cozens, sir, what he had done for me, how many papers that he had filed, and Mr. Cozens informed me that he had interviewed my son and one other witness. That he had filed no papers for me. So Mr. Cozens has done absolutely nothing in 60 some odd days."

On January 9, 1991, the district court agreed to relieve Cozens if Dremann, as substitute counsel, could be ready for the February 5th trial date. On January 14, 1991, Cozens informed the court that Dremann had a conflict of interest and could not represent Moore. On January 16, 1991, the district court again addressed the conflict between Moore and Cozens. Cozens testified about his January 4th meeting, noting that Moore had threatened to sue him and that he felt apprehension of physical harm at the time. Moore then testified that he and Cozens "don't have any communication at all" and related Cozens' failure to keep him apprised of the plea bargaining negotiations. Moore claimed that he was denied an opportunity to review the proposed plea bargain because Cozens would not read it to him when in jail and that Cozens did not have his "best interest at heart." Moore explained that Cozens admitted to having done nothing but interview Moore's son in the prior 68 days. As a result, Moore testified that he had threatened to sue Cozens saying to him: "I know how to fix you, you son of a bitch. I'll sue you for malpractice because I happen to know a little something, buddy. If I sue you for malpractice, they will raise your insurance so high you'll go back to washing cars." Moore related to the court Cozens' failure to inform Moore of a problem with his doctor bills to further illustrate the lack of communication between them. The district court was unsympathetic to Moore's request but offered to substitute counsel if new counsel could be found and be ready by the February 5th trial date. That failing, the court refused to order substitution.

On February 5th, Moore, Cozens, and the district court again met to discuss a letter sent by Moore that further expressed his dissatisfaction with Cozens' representation. The court again renewed its offer to allow substitute counsel if one could be prepared by the new trial date, two and a half weeks away. Cozens related that he and Moore continued to disagree about what to do in the case and that communication between them was sometimes difficult.

In consistent, persistent representations to the court, Moore presented strong evidence of an irreconcilable conflict. In *Brown*, we found sufficient conflict when a defendant "was forced into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any manner whatsoever, communicate." 424 F.2d at 1169. Similarly, in *Williams*, we found sufficient conflict where the "client-attorney relationship had been a stormy one with quar-

rels, bad language, threats, and counter-threats." 594 F.2d at 1260. The testimony of both Moore and Cozens demonstrate a similar breakdown in the attorney-client relationship.[4]

We conclude that an irreconcilable conflict existed between Moore and Cozens, and that it rose to the level of breakdown described in *Brown*, 424 F.2d at 1169, and *Williams*, 594 F.2d at 1260.

### B. Adequacy of Inquiry

In spite of the conflict, the district court did not find any "indication that there [was] any breakdown or inability to defend [Moore]." Instead, the district court encouraged Moore and Cozens "to bury the hatchet here, sit down and establish a working relationship." Other than allowing Cozens and Moore to express their disagreements, the court failed to question either Cozens or Moore privately and in depth.

The district court's inquiry into the irreconcilable differences between Moore and Cozens was minimal. On three occasions, January 8th, 9th and 14th, the irreconcilable difference issue was raised before the court. It was willing to substitute counsel at the request of Moore but only if substitute counsel could be ready, at first, by the February 5th trial date. The court made no inquiry until the January 16th in camera hearing.

On January 16th, Cozens again related that he had a conflict of interest with Moore stating, "it seems to me that if Mr. Moore is forced to go to trial now with me as his attorney, that he will be denied a fundamen-

tal right; that is, to have counsel, effective, a zealous counsel." In this hearing, Cozens warned the court that failure to replace him would be a violation of Moore's Sixth Amendment right to counsel. The court then dismissed the government in order to conduct an in camera hearing to address Cozens' conflict of interest and the breakdown of the attorney-client relationship.

Once in camera, without the government present, Cozens related that he was conflicted because Moore had threatened to sue him and had physically threatened him. Moore then related his inability to communicate with Cozens and Cozens' ineffectiveness in handling the plea bargain. The court did give both parties a chance to speak and made limited inquires to clarify what was said. However, the court made no inquiries to help it understand the extent of the breakdown. For example, when Moore related Cozens' failure to communicate the plea bargain, the court stated "I don't know the facts, Mr. Moore, as to when Cozens got it or what efforts he made to get it to you, and I can't speculate on that." The court was wrong, these facts are highly relevant to the existence and extent of conflict between Cozens and Moore, and the court had a duty to make further inquiries. The court seemed above all to be determined not to disturb its trial schedule, evidenced by the court's willingness to substitute counsel only if Cozens or Moore could arrange new counsel in time for trial. Although worded as if Moore had a choice, the terms imposed by the court essentially

---

4. In addition, Moore claims that the district court exacerbated the conflict through its questioning of Moore and Cozens and by inviting Cozens to contradict Moore's account of their argument. *See United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir.1997) (finding that a district court created a conflict of interest by questioning that attorney and defendant in open court about their conflict). Moore also relies on *United States v. Wadsworth*, 830 F.2d 1500, 1510–11 (9th Cir.1987), for the proposition that an attorney's antagonistic position toward a defendant's request for substitution of counsel violates his Sixth Amendment right to effective assistance of counsel.

Although we conclude that an irreconcilable conflict existed, we reject Moore's reliance on *Gonzalez* and *Wadsworth*. In *Gonzalez*, the dis-

trict court questioned the attorney "in open court with Gonzalez present." 113 F.3d at 1029. Here, the district court questioned Moore and Cozens in camera excluding government counsel. Applying *Gonzalez* to an in camera proceeding without opposing counsel present would eliminate the ability of the district court to inquire into the nature of an attorney-client dispute without creating a conflict that would then require substitution-effectively creating a de facto substitution requirement for all conflicts. With respect to *Wadsworth*, Moore is not similarly situated. Cozens did not oppose Moore's position but rather he supported it. Moore wanted new counsel and Cozens argued that he was entitled to substitute counsel, even to the point of warning the court that failure to substitute would violate Moore's Sixth Amendment rights.

forced Moore to continue with Cozens as his attorney.

Finally, on February 5th, after receiving a letter from Moore detailing the conflict between Moore and Cozens, the district court held another in camera hearing. The ensuing discussion among Moore, Cozens, and the court revealed Moore's continued dissatisfaction with Cozens' performance and investigation. In response, the court renewed its offer to substitute counsel if the substitution would not disturb the trial date now scheduled two weeks hence but again refused to order substitution. In this hearing, the court made more extensive inquiries into the nature of the dispute and, as a result, appointed a paralegal and an investigator to assist Cozens. Here, the court made specific inquiries as to the conflicts between Moore and Cozens. And to the extent those inquiries allowed Moore and Cozens to air their disagreements, the court sought at last to understand them and to ameliorate them, but its efforts were at bottom geared towards forcing the parties to meet the trial schedule. The court's inquiry is comparable to the inquiry we found inadequate in *D'Amore*, 56 F.3d at 1205. In *D'Amore*, we noted that the district court (1) did not inquire into how long a continuance would be needed for new counsel; (2) made no attempt to gauge the inconvenience caused by such a delay; (3) did not question the attorney or defendant as to the degree that their animosity prevented adequate preparation; and (4) did not ask why the motion had not been made earlier. *Id.* Each of these criticisms applies with equal force to the district court's inquiry into Moore and Cozens' conflict.

### C. Timeliness

In evaluating the timeliness of Moore's motion for substitution of counsel, we balance "the resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice." *D'Amore*, 56 F.3d at 1206. In *D'Amore*, we found a motion on the eve of his hearing timely because the defendant had attempted to contact the court ten days before his hearing. *Id.* at 1206.

Moore made multiple attempts to substitute counsel, the first attempts, in January, were over a month before the start of the trial (the trial was initially scheduled for February then was moved out approximately two and a half weeks). His last attempt, on February 5th, was still over two weeks before the start of trial. We find both motions timely. The district court acknowledged as much by offering substitution if Moore or Cozens could find substitute counsel that could be ready in time for the trial. We are not persuaded by the court's claim that none of the requests were timely because all would have required a continuance. In *United States v. Walker*, 915 F.2d 480, 482 (9th Cir.1990), we held that a district court has discretion to deny motions to substitute on the eve of trial that would require a continuance. Moore's efforts supported by Cozens came well before the eve of trial.

Weighing all of the factors, we find an irreconcilable conflict existed between Moore and Cozens. An irreconcilable conflict undermines confidence in trial proceedings and is reversible error. We reverse and remand to the district court for a new trial.

### CONCLUSION

The decision of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for a new trial.