In re HOAR CONSTRUCTION, L.L.C.;
Landry's Management, L.P.; Landry's
Restaurants, Inc.; Hospitality Head-
quarters, Inc.; and St. Paul Fire and
Marine Insurance Company, Relators.

No. 14–07–00666–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 29, 2008.

Craig Welscher, Matthew P. Nickson, Houston, for real parties in interest.

Charles W. Getman, Diane Guariglia, Gregory M. Cokinos, Houston, for relators.

Panel consists of Justices YATES, FOWLER, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

In this original proceeding, relators seek mandamus relief from an order disqualify-

ing their counsel of record from representing them in the trial court. We conclude that the trial court did not abuse its discretion when it disqualified the lawyers pursuant to Rule 1.09(a)(2) of the Texas Disciplinary Rules of Professional Conduct because a reasonable probability exists that confidential information will be revealed. We also conclude that the real party in interest, First Victoria National Bank, did not waive its right to seek disqualification. For these reasons, we deny relators' petition for writ of mandamus.

### UNDERLYING FACTS AND PROCEDURAL HISTORY

The underlying dispute arises out of the construction in downtown Houston, Texas of a hotel named the Inn at the Ballpark ("the Project"). When the dispute began, none of the parties to this mandamus proceeding were part of the suit. A materials vendor for the Project, Mason's Mill & Lumber Co., sued a subcontractor on the Project, A & M Casework, Inc. Mason's Mill sued A & M for payment due under their materials supply contract; Mason's Mill also sued A & M's owner, Lloyd Lewis ("the Construction Litigation").

The current parties became involved in the Construction Litigation when A & M filed a third-party claim for breach of contract against Hoar Construction, L.L.C., the general contractor for the Project. A & M also sued Landry's Management, L.P. and Landry's Restaurants, Inc. (collectively "Landry's"), owners of the Project, for quantum meruit and foreclosure of a mechanic's lien. Hoar Construction's long-standing litigation counsel, Cokinos, Bosien & Young, L.L.P. ("CBY"), appeared for the third-party defendants on December 14, 2004.

While the Construction Litigation was in this posture, A & M defaulted on a number of its obligations, including two promissory notes owned by First Victoria National Bank and guaranteed by A & M's owner, Lewis. In May of 2005, First Victoria hired a CBY lawyer to assist in its collection efforts. First Victoria sued A & M and pursued an adversary proceeding in Lewis's personal bankruptcy ("the Collection Litigation"). In the adversary proceeding, First Victoria alleged that Lewis's guaranty indebtedness was nondischargeable because Lewis fraudulently (1) misrepresented his and A & M's financial status to obtain the loans and (2) diverted a portion of the loaned funds to his personal use. In July 2006, as a result of CBY Collection Counsel's efforts in the Collection Litigation, A & M assigned to First Victoria certain accounts receivable and rights to payment, including any payment accruing from its third party claims in the Construction Litigation. In exchange, First Victoria agreed to dismiss the adversary proceeding in the Lewis bankruptcy. CBY Collection Counsel's last tasks for First Victoria in connection with the Collection Litigation were negotiating and documenting the assignment and terminating the adversary proceeding.

Six months later, in January of 2007, Hoar Construction and Landry's (hereinafter collectively "the Hoar Parties") counterclaimed against A & M and Mason's Mill asserting breach of contract, breach of warranty, and fraud causes of action. In February, on behalf of the Hoar Parties, CBY Construction Litigation Counsel sent a settlement proposal to counsel for A & M and Mason's Mill. In the proposal, CBY Construction Litigation Counsel declared his intention to substitute First Victoria National Bank for A & M as the true party in interest in the Construction Litigation, "so that [the Hoar Parties] may recover from the Bank at least their attorney's fees, if not the entire claim."

In response, First Victoria filed a motion in the Construction Litigation (to which it was not a party) to disqualify CBY as

counsel for the Hoar Parties. First Victoria argued disqualification was required because CBY's continued representation of the Hoar Parties would violate Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct.[1] The trial court granted the motion and entered an order of disqualification. The Hoar Parties now seek relief from the order by writ of mandamus.[2]

### STANDARD OF REVIEW

 Mandamus is an extraordinary remedy to correct a trial court's abuse of discretion that cannot be remedied through standard appellate channels. *Walker v. Packer*, 827 S.W.2d 833, 840–44 (Tex.1992) (orig. proceeding). Appeal is not an adequate remedy for a trial court's erroneous disqualification of a party's chosen counsel. *In re Butler*, 987 S.W.2d 221, 224 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) ("appeal from an order granting a motion to disqualify is inadequate because such an order results in immediate and palpable harm that disrupts the trial proceeding and deprives a party of the right to have counsel of its choice") (citing *Schwartz v. Jefferson*, 930 S.W.2d 957, 959 (Tex.App.-Houston [14th Dist.] 1996, orig. proceeding)). Thus, the sole issue to be resolved in this mandamus proceeding is whether the trial court abused its discretion in disqualifying the Hoar Parties' counsel, CBY.

 To show an abuse of discretion with respect to factual issues, the party requesting mandamus relief must establish that the trial court could have reached but one decision, given the facts existing and

law applicable to the case. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). "Our question in the present case, therefore, is whether based on the present disciplinary rules of professional conduct and the facts of this case, the trial judge had only one choice, that is, to deny the motion for disqualification." *Clarke v. Ruffino*, 819 S.W.2d 947, 949 (Tex.App.-Houston [14th Dist.] 1991, orig. proceeding). Even if the court of appeals disagrees with the trial court's decision, that decision may be disturbed by mandamus only if it is shown to be arbitrary or unreasonable. *Walker*, 827 S.W.2d at 839; *Butler*, 987 S.W.2d at 226. As we explain below, we conclude the trial judge did not abuse his discretion.

### ANALYSIS

**I. The Trial Court Did Not Abuse its Discretion by Disqualifying CBY from Representing the Hoar Parties in the Construction Litigation.**

**A. The trial court's order of disqualification and Rules of Professional Conduct 1.09(a)(2) & (3) and 1.05(b)(3).**

In its order of disqualification ("the Order"), the trial court stated the following findings and conclusions:

> [T]he Court finds that [CBY] previously represented First Victoria in the same matter. That is, [CBY] has previously represented First Victoria in bankruptcy and collection-related issues involving A & M that are implicated in the instant attempts by A & M and [Mason's Mill] to recover monies from [the Hoar Parties]. Both the prior and current representations by [CBY] de-

---

1. Rule 1.09, discussed in detail *infra*, addresses limits on a lawyer's freedom to represent a client in a manner adverse to a former client.

2. Two other parties—St. Paul Fire & Marine Insurance Company and Hospitality Headquarters, Inc.—are also named as relators,

but it appears from statements made by Hoar Construction and Landry's that they are no longer in the suit. Because the record does not reveal their current status, we have left their names out of our discussion. However, their presence (or absence) has no impact on the outcome of the appeal.

pended and depend fundamentally upon a determination of the rights and liabilities of the parties to the instant litigation in relation to the installation by A & M of millwork at the Inn at the Ballpark in 2003.

The Court finds that [CBY] is presumably familiar with, among other confidential information, privileged and unprivileged, First Victoria's litigation strategies, trial tactics, and expectations of collection. The Court also finds that [CBY] is presumably familiar with confidential information in First Victoria's possession regarding the business affairs of A & M, as [CBY] billing invoices reveal that discussions between [CBY] and First Victoria transpired in 2006 regarding the business affairs of A & M and its owners, Lloyd and Nelwyn Lewis. As [CBY] asserts numerous defenses and counterclaims on behalf of its current clients, [the Hoar Parties], the Court finds that there is a high risk that [CBY] may, at least inadvertently, reveal client confidences that were entrusted to it by its prior client, First Victoria. This risk becomes unacceptable in light of [CBY]'s February 13, 2007 settlement letter to [A & M and the Lewises], which letter announces an intention to name First Victoria as a real party in interest so as to recover upon certain counterclaims.

THEREFORE, the Court finds that the disqualification of [CBY] is warranted pursuant to this Court's role as an internal regulator of the legal profession. The disqualification has no punitive component. The disqualification stems, without limitation, from considerations inhering in Rules 1.05(b)(3), 1.09(a)(2) and 1.09(a)(3) of the Texas Disciplinary Rules of Professional Conduct.

Rule 1.09 provides, in pertinent part:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

\* \* \*

(2) if the representation in reasonable probability will involve a violation of Rule 1.05; or

(3) if it is the same or a substantially related matter.

Tex. Disciplinary R. Prof'l Conduct 1.09, *reprinted in* Tex. Gov't Code [vol. 3A], tit. 2, subtit. G app. A (Vernon Supp.2007). Rule 1.05, referenced in Rule 1.09(a)(2), addresses a lawyer's duties with respect to a client's confidential information. Rule 1.05(b), pertinent to this action, provides:

(b) [A] lawyer shall not knowingly:

(1) Reveal confidential information of a client or a former client[.]

\* \* \*

(3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

*Id.* 1.05(b)(1) & (3) (Vernon 2005).

**B. The Hoar Parties' complaints concerning the Order.**

 The Hoar Parties dispute the trial court's findings and its conclusion that Rule 1.09(a) (which incorporates Rule 1.05) requires CBY's disqualification.[3] Specifically, the Hoar Parties appear to contest

---

**3.** "The Texas Disciplinary Rules of Professional Conduct do not determine whether counsel is disqualified in litigation, but they do provide guidelines and suggest the relevant considerations." *National Medical Enterprises,* *Inc. v. Godbey,* 924 S.W.2d 123, 132 (Tex. 1996) (orig. proceeding) (citing *Henderson v. Floyd,* 891 S.W.2d 252, 254 (Tex.1995) (per curiam)); *see also Anderson Producing Inc. v.*

that CBY's representation is adverse to First Victoria's interests. In addition, they contend that the Construction Litigation and the Collection Litigation are not substantially related. The Hoar Parties also claim that CBY's representation of them in the Construction Litigation in reasonable probability will not involve a violation of Rule 1.05. Alternatively, even if CBY were properly subject to disqualification under Rule 1.09(a), the Hoar Parties maintain that First Victoria waived any right it may have had to seek disqualification by not asserting that right in a timely fashion.

We conclude the trial court was within the bounds of its discretion in finding (1) adversity between the parties, and (2) that CBY's representation of the Hoar Parties in the Construction Litigation in reasonable probability will involve disclosure of First Victoria's confidential information. We also conclude that the trial court was within the bounds of its discretion in impliedly finding that First Victoria did not waive its right to seek disqualification of CBY. Because the waiver issue potentially disposes of the mandamus, we address it first.

**C. The trial court did not abuse its discretion in impliedly determining that First Victoria did not waive its right to seek CBY's disqualification.**

**1. Timing of pertinent events.**

■ The timing of events in the underlying suit impacts our decision on the waiver issue. We list the pertinent events below.

| | |
|---|---|
| Before December 2006 | A & M's counsel discusses potential conflict with the Hoar Parties' counsel; parties agree to pause discussion of issue pending scheduled mediation of Construction Litigation |
| 12/19/06 | Mediation (unsuccessful) |
| 01/22/07 | The Hoar Parties file counterclaims against A & M |
| 02/07/07 | First Victoria moves to substitute counsel for A & M in Construction Litigation |
| 02/13/07 | The Hoar Parties send settlement letter expressing intent to (1) substitute First Victoria for A & M and (2) assert claims for affirmative relief against First Victoria |
| 03/26/07 | Order for substitution of counsel |
| 04/12/07 | First Victoria moves to disqualify CBY from representing the Hoar Parties |

**2. The Parties' Arguments Regarding Waiver.**

The Hoar Parties contend that First Victoria waived its right to disqualify CBY because it waited too long to file its motion. *Vaughan v. Walther*, 875 S.W.2d 690 (Tex.1994) (orig. proceeding) (per curiam) (holding party waived disqualification com-

*Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex.1996) (discussing Texas courts' use of disciplinary rules as relevant guidelines for motions to disqualify, particularly where no party offers countervailing considerations); *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990) (orig. proceeding) (same). When parties to a disqualification dispute confine their arguments to whether a particular attorney has complied with the disciplinary rules, courts have accordingly directed their analy-

ses to the rules. *See, e.g., id.; In re Users System Services, Inc.*, 22 S.W.3d 331, 334 (Tex.1999) (orig. proceeding) ("[t]echnical compliance with ethical rules might not foreclose disqualification, and by the same token, a violation of ethical rules might not require disqualification[;] however, the parties and the lower courts have all focused the issue of [disqualification] on Rule 4.02; hence so do we.").

plaint by failing to file timely motion); *see also Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex.1994) (orig. proceeding) (untimeliness of motion to disqualify lends support to suspicion motion is being used as delay tactic); *Abney v. Wal–Mart*, 984 F.Supp. 526, 530 (E.D.Tex.1997) (finding waiver where movant filed motion to disqualify one month before trial although he knew of conflict for whole year). According to the Hoar Parties, after First Victoria learned of the conflict, it waited 23 months before moving to disqualify CBY. The Hoar Parties calculate this 23–month period from May of 2005, when First Victoria hired CBY to prosecute the Collection Litigation against A & M. At that point, the Hoar Parties argue, First Victoria knew that CBY was already defending the Hoar Parties against A & M's claims in the Construction Litigation. The Hoar Parties impute this knowledge to First Victoria from John Cox, A & M's counsel, who also represented First Victoria after it accepted A & M's rights in the Construction Litigation by assignment.[4]

While Cox may have acted as First Victoria's counsel *after* First Victoria acquired A & M's rights in the Construction Litigation in July of 2006, First Victoria was adverse to A & M *until* the assignment was consummated. Given the pre-assignment adversity between A & M and First Victoria, First Victoria contends that we may not impute knowledge from A & M's counsel to First Victoria before July of 2006. In addition, First Victoria argues that knowledge of the dual representation cannot, by itself, constitute waiver of any right to seek disqualification because dual representation, by itself, does not consti-

tute grounds for disqualification. *See generally* Tex. Disc. R. Prof'l Cond. 1.06(b) & (c), comment 11.

Even if no waiver is found from May of 2005, the Hoar Parties insist First Victoria's April 2007 motion to disqualify is untimely because First Victoria knew of its adversity to the Hoar Parties when the assignment was effected in July of 2006. First Victoria concedes it knew of the adversity between it and the Hoar Parties in July of 2006 but denies that it waived any rights by not seeking disqualification until April of 2007.

### 3. First Victoria's motion to disqualify was not untimely.

According to First Victoria, after A & M assigned its rights in the Construction Litigation to First Victoria, A & M's counsel, John Cox, exchanged electronic communications with CBY Construction Litigation Counsel about CBY's apparent conflict of interest. This appears to have been an attempt to resolve any conflict. Citing Texas Supreme Court authority, First Victoria argues this period of negotiation cannot be considered a delay in the assertion of its rights. *See In re EPIC Holdings*, 985 S.W.2d 41, 52–53 (Tex.1998) (orig. proceeding) (refusing to find waiver on seven-month delay between movants' learning of disqualifying facts and filing motion to disqualify, where, for at least four months, movants had worked with other party to identify and resolve disqualification issues). The record contains neither copies of the electronic communications nor information concerning their content or the time period during which they were ex-

---

**4.** First Victoria did not contract with Mr. Cox for representation after the assignment, although it concedes Cox provided *de facto* representation for First Victoria for a period of time between execution of the assignment in July of 2006 and First Victoria's motion to substitute counsel for A & M on February 7, 2007. The motion was unopposed, and the trial court granted the substitution on March 26, 2007. First Victoria's substituted counsel prosecuted the motion to disqualify CBY in the Construction Litigation and represents First Victoria in this mandamus proceeding.

changed. But, the Hoar Parties do not expressly dispute the claim that Cox and CBY Construction Litigation Counsel attempted to resolve the conflict after the assignment.[5]

First Victoria claims that the need to disqualify CBY arose only when the Hoar Parties asserted counterclaims against A & M and shortly thereafter threatened to join First Victoria as a party against which they would seek affirmative recovery. Or, framed slightly differently, even if First Victoria vaguely was aware of a conflict soon after acquiring A & M's rights by assignment, the conflict changed exponentially when the Hoar Parties asserted offensive claims and appeared on the verge of substituting First Victoria for A & M in order to have a solvent defendant.[6]

In its order, the trial court implicitly agreed with First Victoria: "Th[e] risk [of CBY's revelation of client confidences entrusted to it by First Victoria] becomes unacceptable in light of [CBY]'s February 13, 2007 settlement letter to plaintiffs and defendants, which letter announces an intention to name First Victoria as a real party in interest so as to recover upon certain counterclaims." The Hoar Parties attack on three grounds the trial court's

conclusion regarding the import of the February 13 settlement letter.

First, at oral submission to this court, the Hoar Parties contended that the mere threat of action against First Victoria is insufficient, as a matter of law, to give rise to a conflict for CBY. The Hoar Parties cite *U.S. v. Moore,* 159 F.3d 1154 (9th Cir.) (holding that defendant's threat of lawsuit against appointed attorney did not create actual conflict of interest for attorney), and *State v. Waters,* No. 48611–0–I, 112 Wash. App. 1043 (Wash.App. Div. 1, 2002), 2002 WL 1608480 (per curiam) (unpublished decision) (citing *Moore* and refusing to find that defendant's mere threat to sue counsel created an actual conflict), in support of this argument.

These decisions were rendered in criminal cases in which the defendants claimed to have been denied their Sixth Amendment right to effective counsel. They do not apply and are not instructive regarding the propriety of disqualification in this civil case. The considerations are different. As the *Moore* court noted, "Moore's threat to sue Cozens for ineffective assistance was not inconsistent with Cozens' goal of rendering effective assistance," and "finding an actual conflict from a mere threat would allow defendants to manufacture a

---

5. In an affidavit presented to the trial court, CBY Construction Litigation Counsel testified:
 [T]he existence of the parties' competing interests against A & M has been well-known since the commencement of the litigation. My understanding from [First Victoria]'s prior counsel, John Cox, was that his then-client, [First Victoria], was expressly aware of the parties' competing interests against A & M Casework, and that [First Victoria] made no assertion that confidential information had been disclosed to [CBY Collection Counsel], or that any grounds existed to disqualify CBY from continued representation of [the Hoar Parties] in the present litigation. It was my understanding from Mr. Cox that, although [First Victoria] had not expressly waived any poten-

tial conflict, it had done so impliedly, and with full knowledge of the facts and the parties' contentions.
 Use of the phrase "competing interests against A & M Casework" suggests that CBY Construction Litigation Counsel refers to the time before A & M executed the assignment to First Victoria (because at that point First Victoria no longer had a claim against A & M), but First Victoria was not, at that time, Mr. Cox's "then-client."

6. *See* comment 10 to Tex. Disc. R. Prof'l Cond. 1.09 ("A waiver is effective only if there is consent after disclosure of the relevant circumstances, including the lawyer's past or intended role on behalf of each client, as appropriate.").

conflict in any case." *Moore*, 159 F.3d at 1158. Thus, a Sixth Amendment analysis—which is not involved in this mandamus—is concerned with *actual* effective assistance of counsel, not the *appearance* thereof.

The considerations inhering in civil disqualification include avoiding the appearance of impropriety to foster public faith in the sanctity of confidences shared with lawyers. For this reason, we do not find *Moore* and *Waters* relevant to our question here. We reject the Hoar Parties' contention that as a matter of law, a lawyer's threat to sue its former client on behalf of its current client is an insufficient basis for disqualification in a civil case.

Second, according to the Hoar Parties, their February 2007 threat to substitute First Victoria as the real party in interest does not undo First Victoria's waiver of its rights because the Hoar Parties could not actually recover any sums they might be awarded on their counterclaims against A & M. They point out that First Victoria acquired A & M's right to payments from the Construction Litigation but *none* of its liabilities.

But, this ignores one important point. The Hoar Parties' January counterclaims against A & M could offset any recovery First Victoria (as A & M's assignee) may have against the Hoar Parties even if the Hoar Parties could not successfully assert affirmative claims for relief against First Victoria. In short, the counterclaims against A & M presented First Victoria with a different scenario in January 2007 than it originally contemplated when it

received the assignment in July of 2006—CBY's mere defense of A & M's claims against the Hoar Parties.[7]

Third, the Hoar Parties argue that because they expressly rescinded their stated intent to substitute First Victoria as a party against which they will seek affirmative relief, this cannot be a reason to dislodge First Victoria's waiver of its right to seek CBY's disqualification. This argument is unconvincing and assumes that the counterclaims themselves are not enough reason to disqualify CBY. As we have already held, the face of the litigation landscape changed dramatically beginning with the counterclaims filed against A & M.

After having considered the Hoar Parties' arguments, we cannot conclude the trial court abused its discretion by impliedly finding that First Victoria had not waived its right to seek disqualification of CBY when it filed its motion to disqualify in April of 2007, three months after the Hoar Parties asserted counterclaims against A & M.

### D. The trial court did not abuse its discretion in disqualifying CBY pursuant to Disciplinary Rule 1.09(a).

We turn now to the court's decision to disqualify CBY. Initially, to prevail under 1.09(a), a movant must prove that the former lawyer is currently representing another client who is adverse to the former client.[8]

### 1. In the Construction Litigation, the Hoar Parties are adverse to First Victoria.

---

**7.** After all, CBY did not assert the Hoar Parties' counterclaims against A & M until more than two years after originally answering A & M's claims.

**8.** Rule 1.09(b) provides that except in certain instances not applicable here, lawyers in a law firm may not represent a client if any one

of them practicing alone would be prohibited from doing so under Rule 1.09(a). Tex. Disc. R. Prof'l Conduct 1.09(b). Thus, it is of no moment that a different CBY lawyer represents the Hoar Parties in the Construction Litigation than represented First Victoria in the Collection Litigation.

■ In response to the Hoar Parties' petition for writ of mandamus, First Victoria contends, "CBY does not appear to contest—and, in truth, has never contested—that its representation of the [Hoar Parties] is adverse to the interests of [First Victoria]." The Hoar Parties reply, "[The Hoar Parties] and [First Victoria] are both adverse to A & M Casework—not to each other." The Hoar Parties thus appear to dispute that CBY violated the adversity component of Rule 1.09(a).

However, their briefing before us and their stance in the trial court show that they have no real dispute with this. The Hoar Parties' briefing before us is limited to a cursory statement of the standard for determining adversity (" 'Adversity' is a product of the likelihood of the risk and the seriousness of its consequences. [*Cimarron Agricultural, Ltd. v. Guitar Holding Co., L.P.*, 209 S.W.3d 197, 201 (Tex. App.-El Paso 2006, no pet.)] (citing *National Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex.1996)).") The Hoar Parties offer no argument, or citation to authorities, the appendix, or the record, addressing application of that standard to the facts presented here. *See* Tex.R.App. Proc. 52.3(h). And, at a trial court hearing, the Hoar Parties conceded that First Victoria "stepped in the shoes of A & M" when it accepted the assignment. Through this statement, the Hoar Parties admitted both that they are adverse to A & M and that First Victoria and A & M occupy the same position.

The trial court did not abuse its discretion by implicitly finding that First Victoria and the Hoar Parties are adverse.

**2. A reasonable probability exists that CBY will reveal First Victoria's confidential information.**

Next, the Hoar Parties contend that the trial court abused its discretion by finding that disqualification was warranted under Rules 1.09(a)(2) and 1.05(b). We turn now to consider those rules and the trial court's finding.

**a. Rules 1.05 and 1.09 and the Trial Court's Order.**

As we noted earlier, the relevant portion of Rule 1.05, which generally relates to confidential information of a former client, defines "confidential information" in the following way:

(a) "Confidential information" includes both "privileged information" and "unprivileged client information." "Privileged information" refers to the information of a client protected by the lawyer-client privilege of Rule 503 of the Texas Rules of Evidence or of Rule 503 of the Texas Rules of Criminal Evidence.... "Unprivileged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.

Tex. Disciplinary R. Prof'l Conduct 1.05(a) (Vernon 2005).

Rule 1.05(b) primarily states what a lawyer cannot do with confidential information. Two subsections of 1.05(b) are mentioned in the trial court's order; they are set out below:

(b) . . . . [A] lawyer shall not knowingly:

(1) Reveal confidential information of . . . a former client to:

* * * *

(ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.

* * * *

(3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or

the confidential information has become generally known.

*Id.* 1.05(b)(1) & (3).

Rule 1.09 incorporates 1.05(b) and prohibits the use of confidential information of a former client in the following way:

Rule 1.09. Conflict of Interest: Former Client

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

\* \* \* \*

(2) if the representation in reasonable probability will involve a violation of Rule 1.05[.]

*Id.* 1.09(a)(2) (Vernon Supp.2007).

■ Before a trial court may disqualify a lawyer pursuant to Rule 1.09(a)(2), the court must find a reasonable probability that some aspect of 1.05 will be violated. The trial court referred to the two sections of Rule 1.05 set out above—the revelation of confidential information (1.05(b)(1)) and the use of confidential information to the former client's detriment (1.05(b)(3)). However, the trial court made a reasonable-probability finding only as to one of those sections. This finding it made with regard to section 1.05(b)(1), which prohibits a lawyer from revealing confidential information. In its order, the court stated the following:

● "[T]he court finds that there is a high risk that [CBY] may, at least inadvertently, reveal client confidences that

were entrusted to it by its prior client, First Victoria." [9]

The trial court did not make a reasonable-probability finding as to section 1.05(b)(3), which involves the use of confidential information to the detriment of the client. For this section of Rule 1.05, the court merely stated the following in the final paragraph of the order:

THEREFORE, the Court finds that the disqualification of [CBY] is warranted pursuant to this Court's role as an internal regulator of the legal profession.... *The disqualification stems, without limitation, from considerations inhering in Rules 1.05(b)(3), 1.09(a)(2) and 1.09(a)(3) of the Texas Disciplinary Rules of Professional Conduct.*

Rule 1.05(b)(3) is not referred to in any other part of the order, nor is the language of Rule 1.05(b)(3) used in any other part of the order.

In short, the court made the necessary finding of reasonable probability only that CBY would reveal client confidences—subpart (b)(1) of Rule 1.05. As a result, we limit our discussion to that part of Rule 1.05.

**b. While representing First Victoria in the Collection Litigation, CBY received "confidential information."**

■ Before we address the court's conclusion that confidential information in reasonable probability will be revealed, we must first inquire whether CBY Collection Counsel received confidential information by representing First Victoria. *See In re*

---

9. Although the language in the order—a "high risk" that confidences may be revealed—does not track the "reasonable probability" language of Rule 1.09(b)(2), the Hoar Parties do not complain about it. In any event, the language the court used imposes a higher standard than is found in the Rule. "Risk" is defined as "the possibility of suffering harm or loss"; "probability" is defined as

"the likelihood that a given event will occur." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1961, 1806 (1993). These words are synonyms (although "risk" contemplates a negative or at least potentially negative event while "probability" does not). The trial court thus found a high, rather than reasonable, probability that confidential information would be used.

*American Airlines, Inc.*, 972 F.2d 605, 615 (5th Cir.1992) (discussing Texas Disciplinary Rule of Conduct 1.09 provision allowing former client to disqualify counsel "by showing that his former attorney possessed relevant confidential information [as] contemplated by Rule 1.09(a)(2)"); *City of El Paso v. Salas–Porras Soule*, 6 F.Supp.2d 616, 624 (W.D.Tex.1998) (addressing Texas and federal ethical standards and holding firm may be disqualified if movants establish firm possesses relevant confidential information through its former representation of them). As we explain below, we find evidence of this in the record.

As we noted earlier, "confidential information" as defined in Rule 1.05 includes information to which the attorney-client privilege applies as well as "information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client." Tex. Disc. R. Prof'l Cond. 1.05(a). CBY's invoices to First Victoria for work performed in the Collection Litigation demonstrate that CBY acquired "confidential information" for purposes of Rule 1.05.

Much of this information relates to the alleged fraud of A & M and its owners, the Lewises. A & M's owners Lloyd and Nelwyn Lewis personally guaranteed repayment of the money First Victoria lent to A & M. The Collection Litigation included an objection in the Lewises' bankruptcy proceeding to the dischargeability of their debt on the guarantees. In a pleading entitled "Complaint to Determine Exception to Discharge Under 11 U.S.C. § 523," First Victoria alleged that the Lewises (1) fraudulently misrepresented the financial status of A & M, as well as their personal financial status, in order to obtain the loan from First Victoria to A & M, and (2) diverted the loan proceeds and debt collateral from corporate to personal use.

Entries from CBY's invoices establish that CBY Collection Counsel sought and received (by e-mail, telephone conversation, and document exchange) information from First Victoria regarding fraud that A & M's owners may have perpetrated during the loan process:

- Exchange e-mails with [First Victoria] regarding seeking additional information on use of corporate funds for personal purposes. [12/08/05]
- Telephone conference with [First Victoria] regarding financial statement issues. [12/14/05]
- Telephone conference with [First Victoria] regarding intended use of loan proceeds[.] [12/14/05]
- Telephone conference with [First Victoria] regarding research on A & M Casework matter and payment for certain of the individuals' vehicles. [02/02/06]
- Received and reviewed research documents from [First Victoria] regarding A & M Casework bank account; review notes regarding additional items [First Victoria] believed company paid for on behalf of individuals; prepare e-mail to [First Victoria]. [02/09/06]

The invoices also contain an entry suggesting that CBY Collection Counsel may have received information of fraud directed by A & M's owners against entities other than First Victoria:

- Telephone calls from Interspace Construction regarding possible claims against Reggie Lewis regarding tools and equipment of A & M Casework, indebtedness owed to Interspace by A & M Casework, and related matters. [04/18/06]

These invoices support a conclusion that CBY Collection Counsel received confidential information relating to the Lewises' alleged fraud, both individually and in connection with A & M. And, although CBY complains that First Victoria did not high-

light any specific confidential information that CBY Collection Counsel learned while representing First Victoria, the above time entries more than adequately show that CBY Collection Counsel learned confidential information as the term is defined under Rule 1.05(a). *See Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 834 (Tex.1994) (orig. proceeding) (discussing *Coker*'s [*NCNB Texas National Bank v. Coker,* 765 S.W.2d 398 (Tex.1989) ] conclusive presumption that confidences were imparted to counsel, citing definition of "confidential information," and stating "virtually any information relating to a case should be considered confidential"); *Clarke,* 819 S.W.2d at 950 (noting that then-new disciplinary rules take more expansive view of confidential information than former rules of professional responsibility, which were tied to privileged information or secret information requested to be guarded or that would embarrass or detrimentally impact client).

The Hoar Parties presented affidavits from CBY Collection Counsel and CBY Construction Litigation Counsel in an effort to disprove that any confidential information was given to CBY Collection Counsel. The Hoar Parties contend the testimony of these attorneys conclusively refutes that confidential information was imparted to CBY.[10] In his affidavit testimony, CBY Collection Counsel made these statements:

- At that time [during the Collection Litigation], I knew nothing about this [Construction Litigation] except as was disclosed to me by my law partner, [CBY Construction Litigation Counsel], and from A & M's then-counsel of record, John Cox, all of which information I understand was within the publicly available pleadings.

- I received no information from [First Victoria] as to the value or validity, if any, of A & M's claims in the [Construction Litigation], or as to the claims, defenses, and counterclaims asserted by A & M or any of the [Hoar Parties] in the [Construction Litigation].

- During my conversations with [CBY Construction Litigation Counsel], Mr. Tempio [an employee of First Victoria], and Mr. Cox, I learned nothing outside the public pleadings regarding the facts of [the Construction Litigation]. Mr. Tempio provided me no confidential facts regarding A & M's claims and defenses in this action, nor do I have reason to believe he ever possessed knowledge of such facts. Similarly, neither [CBY Construction Litigation Counsel] nor Mr. Cox provided me with any confidential information regarding A & M's claims and defenses or [the Hoar Parties]' claims and defenses in this action and ... I have never spoken to the principals or employees of A & M Casework, nor have I ever had access to any confidential documents or information of A & M Casework.

At most, these statements tend to show that CBY Collection Counsel received no confidential information *about the Construction Litigation* during his work for First Victoria in the Collection Litigation. However, under Rules 1.09(a)(2) and 1.05(b), we, like the trial court, must ask whether he received confidential information, as defined by Rule 1.05(a), from or while representing First Victoria *in the Collection Litigation.* His testimony does not refute that during the course of the Collection Litigation or by reason of his representation of First Victoria, he received information that satisfies the defini-

10. The Hoar Parties also dispute that there is a reasonable probability any such confidential information will be divulged by virtue of CBY's representation in the Construction Litigation. This issue is discussed *infra.*

tion of "confidential information" under Rule 1.05(a).[11]

We conclude that either directly from First Victoria or simply by representing First Victoria in the Collection Litigation, CBY Collection Counsel received information regarding fraud that may have been perpetrated by A & M and/or its owners. This information constitutes "confidential information" under Rule 1.05(a). In making an implicit finding to this effect, the trial court did not abuse its discretion.

**c. A threat of disclosure exists because First Victoria's "confidential information" is relevant to the Construction Litigation.**

 Having found that CBY received confidential information of First Victoria, we must consider the evidence that a threat exists that CBY might reveal this information. In pleadings filed on behalf of the Hoar Parties in the Construction Litigation, CBY alleged A & M's fraud, fraudulent inducement, breach of warranty, and breach of contract in defense of A & M's claims and in counterclaims against A & M for damages. The Hoar Parties allege that A & M, through the acts of its owner, intentionally misrepresented the suitability of its materials for the Project, and falsified a sample of the materials, to induce Hoar Construction to enter into the subcontract with A & M. The information CBY obtained while representing First Victoria in the Collection Litigation may be relevant to these fraud allegations in the Construction Litigation. First Victoria

has satisfied its burden of showing "that some substantive conversations between the former client and the attorney occurred which contained information relevant to the present litigation." *Abney,* 984 F.Supp. at 530 (citing *Islander East Rental Program v. Ferguson,* 917 F.Supp. 504, 512–13 (S.D.Tex.1996)).

The Hoar Parties dispute any connection between First Victoria's fraud allegation in the Collection Litigation (arising from loan procurement) and their own fraud allegation in the Construction Litigation (arising from representations of materials quality and suitability). Indeed, at oral argument to this court, First Victoria conceded that the allegations made in the respective suits involve "different kinds of fraud." However, any difference in the nature of the fraud at issue in each action does not diminish the potential for CBY to divulge First Victoria's confidential information. *Cf. Butler,* 987 S.W.2d at 226 (refusing mandamus relief where trial court found substantial relation between two suits for bad faith insurance practices in spite of one's being for wrongful policy cancellation and the other's for erroneous denial of coverage); *City of El Paso,* 6 F.Supp.2d at 624–25 (finding reasonable probability confidences would be disclosed where firm member commenced deficiency judgment collection action for municipality against company to which other firm member previously provided unrelated tax advice). Any party involved in the Construction Litigation would desire information about

11. The affidavit testimony of CBY Construction Litigation Counsel is not material to the question whether CBY received "confidential information," for purposes of Rule 1.09(a)(2) and Rule 1.05(a), by representing First Victoria in the Collection Litigation. CBY Construction Litigation Counsel does not offer (if he is even competent to offer) evidence of what First Victoria did or did not share with CBY Collection Counsel or what information CBY Collection Counsel may have obtained in the course of representing First Victoria. The testimony of CBY Construction Litigation Counsel naturally addresses what information he, as counsel for the Hoar Parties, learned (or, rather, did not learn) when he and CBY Collection Counsel conversed in April and May, 2006. We discuss this testimony in our analysis of the trial court's finding that there is reasonable probability that CBY will divulge "confidential information" in the Construction Litigation.

other potential fraudulent actions of A & M.

The claims each party asserted and/or defended against A & M were different, but given the Hoar Parties' sense of having worked together with First Victoria to defeat the common adversary, a finding that CBY may inadvertently reveal a confidence gained during its representation of First Victoria is not unreasonable. For example, in 2004, the Hoar Parties raised fraud as a defense in the Construction Litigation to A & M's third-party claims for breach of contract, quantum meruit, and mechanics' lien. In 2006, in the Collection Litigation, CBY Collection Counsel received confidential information from First Victoria, or by representing First Victoria, regarding the possibility that A & M's owners misrepresented their and A & M's financial status to First Victoria and diverted corporate property to personal use; it appears that CBY Collection Counsel also may have received information regarding fraud by A & M against another company. In 2007, in the Construction Litigation, the Hoar Parties asserted a counterclaim against A & M seeking to recover (a) actual damages caused by (among other theories) A & M's fraud and fraudulent inducement, (b) punitive damages, and (c) attorney's fees. While the Hoar Parties' post-Collection Litigation adoption of an offensive posture does not necessarily suggest that CBY has divulged information from the Collection Litigation in advising the Hoar Parties in the Construction Litigation, the potential exists for CBY's inadvertent disclosure of such information.

**d. The test for disqualification is the reasonable probability of disclosure, not actual disclosure.**

■ In affidavit testimony presented to the trial court, CBY Construction Litigation Counsel acknowledged the conversations with CBY Collection Counsel that were itemized on the CBY invoices to First Victoria. He denies, however, that he learned any confidential facts or information during those conversations regarding facts or claims in the Construction Litigation. He stated:

> During my two conversations with [CBY Collection Counsel] and one overheard conversation between [CBY Collection Counsel] and Mr. Tempio [First Victoria's vice president] (in which my attendance was disclosed to Mr. Tempio), I learned nothing outside the public pleadings regarding the facts of this [Construction Litigation]. Mr. Tempio provided me no confidential facts regarding A & M's claims and defenses in this [Construction Litigation], or of [First Victoria]'s claims and defenses. Similarly, [CBY Collection Counsel] provided me no confidential information regarding A & M's or [First Victoria]'s claims and defenses in this [Construction Litigation].

CBY Construction Litigation Counsel does not categorically deny receipt at any other time of information from CBY Collection Counsel or First Victoria, nor is there any indication whether he uses the term "confidential information" in the manner defined in Rule 1.05(a) or in a more pedestrian sense. Even if CBY Construction Litigation Counsel and CBY Collection Counsel testified strenuously that information has never passed between them or among other CBY attorneys with regard to the two matters, the propriety of disqualification rests not on whether confidential information *has been* divulged or used to the detriment of the former client. Disqualification is appropriate when there is a *reasonable probability* of such information's being used or divulged. Tex. Disc. R. Prof'l Cond. 1.09(a)(2).

The Texas Supreme Court has stated, "The test for disqualification is met by

demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure." *Grant,* 888 S.W.2d at 467 (emphasis in original). The policy behind the rule is that "any rule focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification, since the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification." *Id.*

In *Grant,* the trial court disqualified defense counsel because it hired a secretary who had been employed by the plaintiffs' lawyer and had worked on the case. Before the motion to disqualify was filed, the hiring firm became aware that the secretary had worked on the case during her previous employment, but simply instructed her not to discuss her prior work. She was not removed from contact with the case. The court of appeals granted mandamus directing the trial court to vacate the order disqualifying the firm on the strength of testimony from the defense lawyers that the secretary had actually revealed no confidences to them. The Supreme Court rejected the court of appeals' reasoning, noting the defense firm's lack of institutional procedures designed to guard against passage of information from employees who previously worked on matters adverse to firm clients. Applying the rule that the threat of disclosure rather than actual disclosure is the basis for disqualification, the Supreme Court issued a conditional writ of mandamus directing the court of appeals to vacate its judgment.

In short, a reasonable probability exists that First Victoria's confidential information, as defined in Rule 1.05(a), will be divulged because CBY is representing the Hoar Parties in the Construction Litigation. This reasonable probability is not based on any presumption that CBY lawyers will act improperly. However, while working for First Victoria during the Collection Litigation, CBY obtained confidential information that is relevant to claims asserted by their clients the Hoar Parties in the Construction Litigation. The reasonable probability of disclosure or use is not affected by CBY Construction Litigation Counsel's testimony that no confidential information was exchanged during his conversations with CBY Collection Counsel during the Collection Litigation. *Cf. Grant,* 888 S.W.2d at 467–68; *In re Bell Helicopter Textron, Inc.,* 87 S.W.3d 139, 148 (Tex.App.-Fort Worth 2002, orig. proceeding) ("actual disclosure of confidences need not be proven before disqualification is required").

## CONCLUSION

CBY's activities in the Construction Litigation, beginning with the counterclaims it filed against A & M in January of 2007 and including its threat to substitute First Victoria as a party of interest in place of A & M, created a high degree of adversity between First Victoria and the Hoar Parties. The evidence presented to the trial court also showed that CBY obtained confidential information of First Victoria in the Collection Litigation. Some of this information—especially the confidential information related to fraud allegedly committed by the Lewises and by A & M—is relevant to the Hoar Parties' counterclaims against A & M and certainly would be of interest to any party involved in the Construction Litigation with A & M.

On this record, we cannot say that the trial court abused its discretion in disqualifying counsel. We deny the Hoar Parties' petition for writ of mandamus.